## Klopp *versus* Witmoyer and Arentz.

*Sheriff's Sale of Personal Property in the mass, invalid.— What control Sheriff must have of Chattels sold by him.*

1. A sheriff sold under a *fieri facias*, by direction of the attorney of the plaintiffs therein, an entire stock of lumber and coal, belonging to the defendant, *in the mass*, to the plaintiffs whose bid was the only one made. *Held*, that as there were no circumstances shown to justify a departure from the rule that a sheriff must sell separately or in parcels, the sale was void in law, and passed no title to the purchasers.

2. The sale was not necessarily void because a portion of the property sold was at some distance from the place of sale; although personal property must be in the power of the sheriff when he sells, and where bidders may inspect it, yet the articles need not be immediately in view when sold.

ERROR to the Common Pleas of *Lebanon county*.

This was a proceeding in the court below under an attachment execution by Benneville Klopp against John Witmoyer and Philip Arentz, as garnishees of John H. Witmoyer.

The material facts of the case are as follows :—

John Witmoyer and Philip Arentz entered up judgment-bonds against John H. Witmoyer on the 17th day of August 1858, and immediately issued executions thereon. At the time the writs were issued John H. Witmoyer kept a lumber and coal yard. By directions of plaintiffs' attorney, all the lumber and coal were put up in gross, and bought in by them at their first and only bid offered to the sheriff, viz., $5700. The lumber was of various kinds, embracing a complete assortment of stock, such as is usually kept by lumber merchants, and the coal consisted of stove and limeburners' coal.

About one-third in value of the property thus sold in bulk, was lying about a third or half a mile away from the place of sale, and was not exhibited to the persons attending the sale. An advertisement of the sale, offered in evidence by the defendants on the trial, showed that the sale was advertised to be held at the lumber-yard, and no reference was made in it to the fact that part of the property to be sold was lying at another place, nor was the sale adjourned to give the persons present an opportunity to go to the canal and examine the property which lay there. Neither did the advertisement specify that the property was to be sold in gross.

The sheriff testified that he received directions from plaintiff's counsel to make the sale in this way, and that without such directions he would not have sold the property in one lot. The plaintiff below contended that a sale of so large a quantity and variety of property like this in gross, by directions from plaintiff's counsel, was against public policy, and that where the plaintiffs

in the execution themselves were the purchasers, it was conclusive evidence of fraud, *per se*, and no title passed to the purchasers, and that this was especially so here, since a great part of the property sold was not at the place of sale, nor within convenient distance, where it could be seen and examined by the bidders. That the sale was at least void as to the property which lay at the canal.

At the time this sale was made, the plaintiff in error here was a simple contract-creditor of John H. Witmoyer. He afterwards brought suit on his note, which was given in payment of lumber, obtained judgment by an award of arbitrators, and after the twenty days for entering an appeal had expired, issued an attachment of execution, and had the present defendants summoned as garnishees, seeking thereby to recover his claim out of the funds in their hands, produced from a conversion of the lumber and coal in question.

Under the instruction of the court below there was a verdict and judgment for the garnishees. This writ was thereupon sued out by the plaintiff, for whom the charge of the court below was assigned for error.

The points made by the learned counsel by whom the case was argued, will be found in the opinion of this court.

*Levi Kline* and *Josiah Funck*, for plaintiff in error.

*John C. Kunkel* and *J. W. Killinger*, for defendants.

The opinion of the court was delivered, July 24th 1861, by

STRONG, J.—The plaintiff in error and defendant below can only succeed by showing that the sheriff's sale, under the execution of the defendant, was absolutely void. If it was only irregular and voidable, he is not in a position to question it. He was neither an execution or a judgment creditor of John H. Witmoyer when the sale was made, nor was his suit commenced until more than seven months afterwards. The contest in the court below, therefore, very properly was, whether the sale was fraudulent in fact, or so conducted that the law pronounced it void. Several assignments of error have been made to the charge of the court. They present, however, but three questions, each of which will be considered.

The property sold was the stock of a lumber and coal yard. The lumber was of various kinds and qualities, consisting of boards, planks, shingles, scantling, lath, palings, &c., and was principally at the yard in the borough of Lebanon. A part of it, however, perhaps a quarter of it in value, and the coal, worth more than $300, anthracite and bituminous, was at the canal, from a third to half a mile distant from the lumber-yard. The

[Klopp v. Witmoyer and Arentz.]

defendants in error were the creditors under whose judgments the property was sold, and they became the purchasers at the sale. The entire stock of lumber and coal, as well that at the yard as that at the canal, was put up by the sheriff in the mass, and struck off by him to the defendants for $5700, theirs being the only bid made. There was evidence that the attorney of the defendants directed the sheriff to make the sale in that manner in the lump, and it was proved that it was made at the yard in town, none going to the canal to see the articles there. There was also evidence that before the day of sale one of the defendants had offered to give credit if the lumber was sold by the lump, but that on the day of sale he told the bystanders he had a notion to buy it himself, and that if sold in the lump it must be paid for in cash.

The question of fraudulent intent was submitted to the jury, and in regard to that we have nothing before us. It is complained, however, that the court instructed the jury that "the sale of the property in mass was not in itself void, that the sheriff had a sound discretion so to dispose of it, and if in his honest judgment it would in that way command the best price, the sale cannot be avoided, especially by one who had no interest whatever in the subject-matter at the time of the sale." And again, "if this course (a sale in mass) was adopted without any sinister design, but with an honest conviction that, under all the circumstances, it was most advantageous for all interested, debtor, creditor, and all other creditors, it is not fraud in law, and no evidence of fraud in fact." And again, the learned judge said, " we have already said that there is not such irregularity in this sale as to render it void."

Our Acts of Assembly require that sales of property taken in execution shall be by public auction, and sales in any other way are void. But there is no statutory requirement that property seized must be sold in detail, in parcels, or in the aggregate. The mode of selling, whether in parcels or in mass, has been left unregulated by statute. The practice undoubtedly has been to sell in detail, or in small quantities, and such has been understood to be the duty of the sheriff. To say the least, the sale that was made in the present case was a gross irregularity, if it was not in law a nullity. The policy of the law is to multiply bidders and increase competition. Thus the interests of the debtor are advanced, as well as those of the creditors. It is for this reason that any attempt on the part of a purchaser to dissuade bidding avoids the sale, and leaves the property open to seizure at the suit of another creditor. But selling the entire stock in a lumber-yard, or in a store, in mass, inevitably narrows the circle of bidders, and consequently diminishes competition. Many purchasers might be found for portions of the lumber or

[Klopp *v.* Witmoyer and Arentz.]

of the coal; few would be able to buy the whole stock and pay the purchase-money down. No more effectual mode could be adopted to enable the execution-creditor to obtain the property at his own price.

It may be that here and there a person would give more for a stock of goods if sold together than he would if sold in detail, but he is not likely to be compelled to give more by competition. The sheriff's duty is regulated not by what might be the result in an extraordinary case, but by general rules of policy, and to to those rules the public interests require that he should strictly be held. If he may sell numerous articles at wholesale whenever he thinks they will thus bring a better price, why may he not sell privately if, in his judgment, it would be advantageous? The statute, indeed, demands a public sale, and only legal policy requires a selling at retail; but the object of this policy and the statute is the same. It is to secure the best price for the property levied upon, and to guard against frauds. In Rowley *v.* Brown, 1 Binn. 61, where it appeared that the sheriff had sold by a lumping sale three pieces of land which might have been sold separately, though they were jointly subject to an entire ground-rent, the sale was set aside, and it was said to be the rule of this court to disallow a lumping sale by the sheriff in every case where, from the distinctness of the items of the property, we can have distinct sales. It was said to be essential to justice, and to the protection of unfortunate debtors, that this should be the general rule; any other would lead to the most shameful sacrifices of property. If such is the rule in regard to sales of real estate, a *multo fortiori* should it be in respect to sales of personalty. Abuses are more easy in the latter than in the former. Judicial sales of real estate pass directly under the inspection of the court at the acknowledgment of the deed, but over sales of personalty the court has no such immediate supervision. It is to be observed, that the rule of public policy which requires sales of personal property taken in execution to be made in detail, has for its object more than the protection of the debtor, and the interest of the execution-creditor. Its purpose is also to protect the general creditors of the debtor against fraudulent sales under the forms of law. If a sheriff may at his discretion sell the entire stock of a store, of a lumber-yard, or a coal-yard in the lump, it is obvious that creditors generally are at the mercy of the debtor and a single creditor. The present case is a good illustration of the mischief. The father of a debtor levies an execution upon a large and varied stock of his son's personalty, appraised at nearly $6000. By his direction, or that of his attorney, or at least at his instance, it is offered and sold as an entirety. The father becomes the purchaser at his first and only bid. No other person could have bid

[Klopp *v.* Witmoyer and Arentz.]

unless prepared to pay more than $5700 in cash. It is easy to see how such sales, if tolerated by the law, might be converted into mere covers for the property, and prove ruinous to creditors generally. Possibly in this case the bid was not much, if any, less than what the property would have brought if sold separately or in parcels; but the policy of such sales is not to be determined by the results of a single case, nor indeed by the motives which might have induced it. The learned judge of the Court of Common Pleas was of opinion that the law left it to the sound discretion of the sheriff to determine whether the property should be set up and sold in bulk, in lots, or by single articles, and that his judgment was to be regulated by what he believed would command the best price. If this be so, it is not easy to see how sales of personalty by the single article, or in lots or parcels, can be required by any rule of legal policy, or how a sale in bulk can even be an irregularity. The policy of the law must then vary with the discretion of the sheriff. That such a doctrine would be dangerous, it requires no words to show. Nor do I find that the authorities referred to by the learned judge sustain it. The first is Perkins *v.* Spalding, 2 Mich. 157. There was a constable's sale of growing wheat in three adjoining parcels; the interest sold was an undivided interest, and the purchaser was under obligation to harvest the whole. From the very nature of the property, therefore, it could only have been sold as an entirety. In delivering their judgment, the court said it is the duty of the officer "to sell in such lots or parcels as to command the highest price. But he has a large discretion, and is not required to sell each article separately." This is the extent of that case. In State *v.* Morgan, 7 Iredell 387, there was a sale of several articles in bulk, and it was held unlawful, though the court agreed that if the creditors had assented to such a mode of sale, they could not afterwards question it. In Tifft *v.* Barton, 4 Denio 171, the court held a lumping sale of personalty, subject to a chattel mortgage, well made, because unless one man purchased the whole, he would not acquire the equity of redemption. If one purchased a part he could not redeem *pro tanto*, and he would have no remedy at law, if he would in equity, for contribution. The case is no authority for the doctrine that selling in mass is at the sheriff's discretion. Indeed, the New York revised statutes require personal property to be sold in lots or parcels: 2 R. S. 367, 23. The only other case cited is Wood *v.* Doane, 20 Verm. 613, in which it does not appear that the property was sold in the lump. Within certain limits, doubtless, the officer must exercise his own judgment. He is not bound to sell in all cases by the single article. He may and often should sell in lots or parcels—what lots or parcels must be left to his honest judgment; but I apprehend his discre-

[Klopp *v.* Witmoyer and Arentz.]

tion does not reach so far as to authorize him to sell in mass, entirely in bulk. And if such a sale be in conflict with the established policy of the law, why must it not be worse than irregular, and therefore voidable only at the instance of the debtor or lien-creditor? There may be circumstances that would justify a sale by the aggregate of personal property seized in execution. There were such in Tifft *v.* Barton; but a purchaser who claims under such a sale ought to show their existence. *Primâ facie* the sale is not good. No circumstances were shown in the present case to justify a departure from the common rule that the sheriff must sell separately or in parcels, and we think, therefore, there was error in the unqualified instruction given to the jury, that there were no such irregularities in the sale as to render it void.

The error becomes more palpable when considered in connection with the answer which the court gave to the third point of the plaintiff below. That point was, "if the jury believe that the counsel of the execution-creditors of John H. Witmoyer, under whose (executions) the property was sold, gave directions to the sheriff that the same should be sold in gross, and that the sheriff, in pursuance of such request, sold the same in that way, it was a fraud in law, and the plaintiff was entitled to recover."

To this the court answered: "The law is not so, unless the instruction was intended for a fraudulent purpose, or there is satisfactory evidence in the case that the sale operated unjustly, by the property selling for a less price than it would have brought if exposed in lots or parcels." It is not to be forgotten that the plaintiffs in the executions were the purchasers at the sale. Now, even if the sheriff might, at his discretion, sell the entire stock of lumber and of coal, and the office furniture in mass, as the court below thought, that discretion was not to be controlled by the plaintiffs in the executions and the purchaser. That would be intolerable. It would be in effect substituting the will of the creditor and purchaser for the discretion of the officer of the law. It may be, and it is the law, that the sheriff is not bound to obey any illegal direction. But can a party who has done all in his power, by himself or his attorney, to take away any discretion of the sheriff, be heard to say that the sheriff's discretion was exercised. Who knows how far the officer felt controlled by the direction of the attorney? In this case the sheriff testified that he never sold in that way (in the lump) but by direction of counsel. Liability to the plaintiff in an execution is before the eyes of a sheriff when he determines how a sale is to be made. But if he follow instructions he is not liable to the party who has given them: Strong *v.* Bradly, 14 Verm. 55. Even, therefore, if he be under no obligation to follow instructions, they do not leave him a full discretion, and if

the creditor and purchaser takes away the discretion of the sheriff even in part, how can he protect himself under a sale made in bulk? How can he insist that it was made in accordance with the demands of the law? If the question raised by the point had been whether there was actual fraud in the sale, the court would very properly have called the attention of the jury to the inquiry whether the instruction or request to sell in bulk was intended for a fraudulent purpose. But such was not the design of the point. The opinion of the court was asked upon what was alleged to be a fraud in law. They were asked to say whether a sheriff, holding a *fi. fa.* levied upon a large quantity of personal property of different kinds and assorted varieties, the value of which is many thousand dollars, in pursuance of the direction or request of the plaintiff in the execution, sells it all in a lump to the plaintiff, without any attempt to sell by parcels, such a sale is valid in law. Whether it is a judicial sale so made as to pass the title to the purchaser, that purchaser being himself the plaintiff in the execution. We think the court should have affirmed the plaintiff's third point, and pronounced such a sale void in law. The public interests require that a watchful eye shall be kept upon sheriffs' sales, and that those officers shall be held rigidly to the performance of their duty. And the plaintiff in an execution cannot be permitted to do anything which tends to restrain bidding or limit competition, and himself become the purchaser.

The remarks of Judge Coulter in McMichael v. McDermott, 5 Harris 358, are sound: "The principle is that he who has the absolute control of the sale for his own benefit cannot be a purchaser, unless there is fair competition of bidders, or a lawful opportunity given for such competition; otherwise the property of the debtor might be sacrificed. And even the consent of the debtor would not cure the defect, for there is often collusion between him and a particular creditor. The other creditors have an interest that must be protected."

The court was also asked to charge the jury in substance that the sale was void because a portion of the property was from a third to a half a mile distant from the place of sale. We think the answer of the court to this request was unexceptionable. Doubtless personal property must be in the power of the sheriff when he sells, and where bidders may inspect it. But a sale is not necessarily void because the articles are not immediately in view when sold. The remarks of the learned judge upon this subject were discriminating and just. We discover no other errors in the record than those which we have noticed.

The judgment is reversed, and a *venire de novo* awarded.