# Baker *versus* The Chester Gas Co.

1. Cornog owning land encumbered it by a judgment, laid it out in lots and streets and sold to Baker one lot described as bounded on Evans street, one of those laid out. The remaining lots were sold under a prior mortgage; some described as on Evans street were sold to Campbell; some also described as on Evans street were sold to Baker; Evans street *as a lot* and other lots, described as on Evans street, were sold by the sheriff to Hannum. Campbell conveyed to defendants, describing Evans street as a boundary; Hannum's title to Evans street became vested in the defendants; in all the

[Baker *v.* Chester Gas Co.]

sales by sheriff or individuals, Evans street was recognised.  *Held*, that the description was in the line of defendants' title and it showing that Evans street had been dedicated to public use they could not close it.

2.  The general rule is, that upon a sheriff's sale different lots should be sold separately; notwithstanding they are covered by a common encumbrance.

3.  By the sheriff's sale of the lots as bounded on Evans street the purchaser obtained title to the middle of Evans street.

4.  Cox *v.* Freedley, 9 Casey 124; Grier *v.* Sampson, 3 Casey 183; Paul *v.* Carver, 2 Casey 223, followed.

January 21st 1873.   Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ.   SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Delaware county :* No. 176, to January Term 1873.

This was an amicable action for obstructing a street; Perciphor Baker was plaintiff and The Chester Gas Company were the defendants.   The following facts appeared by a case stated filed in the cause.

On the 28th of June 1854, Thomas Maddock conveyed to Ferdinand Cornog and Cadwallader Evans, a tract of 3¾ acres of land in Chester, and at the same time the purchasers gave to their grantor a mortgage, which was duly recorded, for part of the purchase-money.

On the 16th of September 1854, a judgment for $2000 was recovered in Court of Common Pleas of Delaware county, by Thomas Steel against Cornog & Evans and R. E. Hannum (their surety).

Cornog and Evans divided the tract into 50 building lots and laid out Porter, Crosby and Evans streets through it: they also made a plot of the division and of the streets, it was uncertain whether the plot was made before Steel's judgment was entered; but there were then no marks on the ground to designate the streets or lots.

On the 25th of October 1854, Cornog & Evans conveyed to Baker, the plaintiff, a lot 110 feet square on the east side of Welsh street and bounded on the south by Evans street, one of the new streets laid out by them; this deed was recorded October 25th 1854, Maddock having released this lot from the lien of his mortgage.

A levari facias on the mortgage was issued to November Term 1855.   Before the sheriff's sale under it, the streets and lots laid out by Cornog & Evans were marked on the ground.   The description of the property in the levari facias was "All those 49 several lots or pieces of land situate on the south-eastwardly side of James Street, and on the north-westwardly side of Welch street * * * bounded by said streets and lands of Perciphor Baker, George Baker," and others; under this levari fifteen of the lots "bounded on the north by Evans street," were sold to James Campbell; and ten of the lots, "situate on the north-westwardly side of a street lately surveyed and called Evans street; each of said ten

lots having a front of 20 feet; on said Evans street, 110 feet"
were sold to Baker, the plaintiff, who continued to hold them.

Under a venditioni to August Term 1856, on Steel's judgment,
amongst other lots, the first-mentioned lot, which had been sold to
Baker, was sold by the sheriff to R. E. Hannum, one of the de-
fendants in the judgment. The lot was described in the writ as
" bounded by land late of Cornog & Evans, by Welch street, by
Evans street containing," &c. Under an alias venditioni to Novem-
ber Term 1857, on the same judgment, the sheriff sold the three
streets laid out ·by Cornog & Evans. No. 2 was ·described as
" A lot of land called Evans street, situate on the north-east side
of Welch street and measuring thereon 45 feet, and extending
the same width from said street 313 feet to the south side of the
above-described lot, bounded on the west by Welch street, north by
lots of R. E. Hannum and P. Baker, east by the aforesaid de-
scribed lot, and south by the Gas Company. The lot mentioned
in the foregoing description as P. Baker's, is the "*ten lots*" sold
to him by the sheriff, as before stated.

On the 1st of May 1856, James Campbell conveyed to the Gas
Company (defendants), the land purchased by him at sheriff's sale
as before mentioned; it was described in the deed to the defend-
ants as " bounded on the north-west by Evans street and contain-
ing along said Evans street 312 feet."

On the 5th of April 1860, Hannum conveyed to the defendants
"a tract of land known as Crosby street," one point of the
boundary as stated in the deed, " being the south-east corner of a
lot belonging to the said Hannum known as Evans street."

On the 11th of March 1864, Hannum conveyed to Thomas
Hollins part of the lot purchased by him at sheriff's sale and
part of Evans street. The description in the deed is: " Lot of
land on east side of Welch street, 154 feet south of south side of
James street, a corner of a lot of John Wilde, thence east by
said Wilde's lot, and parallel with James street, 110 feet, to
the line of P. Baker's lot, and thence at right angles, between
lands of Baker and Hannum, 120 feet, to land of Gas Company,
and thence at right angles 110 feet to Welch street, and thence
121 feet to the place of beginning." Being part of the premises
No. 2, in sheriff's deed book, &c., and also part of the tract known
as Evans street, in sheriff's deed book, &c.

On the 13th of July 1870, Thomas Hollins conveyed the last
above described premises to the defendants, the said Gas Company.
They hold the premises, and claim to have a fee simple title thereto.
Evans street is closed up by a fence or gate at each end of the
110 feet, maintained by the defendant; the plaintiff is not allowed
passage thereover, and has no other means of access to his lot.

It was agreed that " If the court shall be of opinion that under
the law applicable to the foregoing facts, the plaintiff is entitled

[Baker *v.* Chester Gas Co.]

to recover, then judgment to be entered in favor of the plaintiff for six cents. If the court shall be of the contrary opinion, then judgment to be entered in favor of the defendants."

The court (Butler, P. J.) entered judgment on the case stated for the defendants.

The plaintiff removed the record to the Supreme Court, and assigned for error the entering judgment for the defendants.

*J. B. Hinkson,* for plaintiff in error.—The sheriff was bound to sell according to the divisions and streets marked on the ground although one one encumbrance covered the whole land : Ryerson *v.* Nicholson, 2 Yeates 516 ; Rowley *v.* Brown, 1 Binney 61 ; Vastine *v.* Fury, 2 S. & R. 433 ; Donaldson *v.* Bank of Danville, 8 Harris 247 ; Tate *v.* Carberry, 1 Phila. R. 133.

*W. Ward,* for defendants in error.

The opinion of the court was delivered, February 24th 1873, by

MERCUR, J.—The plaintiff assigns for error the entry of judgment in favor of the defendant upon the case stated.

This depends upon the validity of the right claimed by the defendant to close up a portion of Evans street, in the city of Chester.

The land covered by this street is part of a larger lot bounded westerly by Welch street, which was purchased June 28th 1854, by Cornog & Evans. Upon the same day they executed a mortgage to the vendor to secure the payment of a part of the purchase-money. They purchased the land with a view of dividing it and selling it for building lots. They laid out three streets, to wit, Evans, Crosby and Porter, and fifty lots, and made a plot or draft thereof. October 23d 1854, the plaintiff purchased of them by deed one of the said lots, having a front of 110 feet on Evans street, bounded west by Welch street, and south by Evans street. Upon the same day the mortgagee released this lot, as described in the deed, from the judgment of the mortgage. Judgment having been subsequently entered upon the mortgage, a levari facias issued thereon to November Term 1855, and the remaining lots were sold by the sheriff. In the writ they were described as "all those 49 several lots." Fifteen of said lots, "bounded north by Evans street," and extending along the same 312 feet, were purchased by Campbell ; ten of the lots on the northerly side of Evans street, east of and adjoining the plaintiff's lot aforesaid, with a frontage of 20 feet each on Evans street, were purchased by plaintiff. Prior to this sale, the streets and lots had been designated by marks upon the ground. May 1st 1856, Campbell conveyed his said 15 lots to the defendants bounding them by "Evans street."

It appears, however, that upon the 16th of September 1854,

[Baker *v.* Chester Gas Co.]

one Steel obtained a judgment against said Cornog & Evans, and one Hannum. Whether the plot or draft of the lots and streets had then been made is uncertain.

The proceeds of the sale upon the mortgage were insufficient to reach this judgment. A venditioni exponas issued thereon to August Term 1856, by virtue of which the sheriff sold to said Hannum, the lot situate at the north-east corner of Welch and Evans streets, which had been conveyed to plaintiff in October 1854, as aforesaid; and to one George Baker, another lot, part of said mortgaged premises, bounded by Crosby street. Under an alias venditioni exponas, issued on the same judgment to November Term 1857, said Hannum purchased the land covered by each, Evans, Crosby and Porter streets, the former being described as "a lot of land called Evans street," measuring 45 by 313 feet, and bounding it on the north and on the south by lots previously sold at sheriff's sale as aforesaid.

By virtue of divers mesne conveyances all the title which Hannum acquired by his purchase of Evans street, for the distance of 110 feet easterly from Welch street, became vested in said defendant. They thereupon closed up the street, putting a fence or gate at each end of the 110 feet, thereby closing the plaintiff's passage through the street, and he has no other way of access to his said ten remaining lots.

Thus it appears, at each sale, both public and private, made prior to the sale of Evans street, it was distinctly recognised as a street. The lots lying north and south of it were bounded by it. The sale upon the judgment united with the sales upon the mortgage in proclaiming it to be a street. Every lot which the defendants own, when sold at sheriff's sale, was bounded upon it. This description is directly in the line of their title. Each deed showed it to be a street dedicated to the public. The fair presumption is that a larger sum was realized from the sale of the property in lots than if it had been sold in one body.

Upon a sheriff's sale of land the general rule prescribed by public utility is that different lots of ground should be sold separately. The reason is that the competition is thereby much increased; many persons might desire to purchase *one*, who would not, or could not purchase several. The primary object of selling at sheriff's sale is not to transfer the title; but to collect the money. A common encumbrance creates no reason for selling the lots together: 1 Troubat & Haly, part 2d, 1001. Upon an application to the court whence the execution issued, a sale will be ordered by such subdivisions as will be most likely to produce the largest sum. In this case, without an order of court, the sales were made, it is fair to presume, in the manner the court would have ordered, if application had been made thereto. The lots having been thus sold without objection from defendants in the executions, or from

[Baker *v.* Chester Gas Co.]

any of the lien-creditors, and purchasers having invested their money therein, the titles thereby acquired must now be held to be of like force and effect as if the sales had been made in pursuance of a prior order of court. Great injustice would be done to the purchasers of lots bounded by Evans street to hold now that their titles extend no further than the edge of the street, and that a subsequent sale of the ground covered by the street, excluded them therefrom. Conceding then, what the case stated does not admit, that the lien of the judgment attached prior to the making of the plot dedicating the street to public use, yet we think the learned judge erred in holding that the sale of the lots bounded by Evans street did not divest the lien of the judgment upon the land covered by the street. By those sales the title to the whole land passed and nothing remained to be sold. The law is well settled, that upon a sale of a lot bounded by a street, the title passes to the centre of the street: Paul *v.* Carver, 12 Harris 207; Idem, 2 Casey 223; Grier *v.* Sampson, 3 Casey 183. Even if the lot be bounded by the *side* of the street, the grantee takes title to the centre thereof, if the street is not expressly or by clear implication reserved: Cox *v.* Freedley, 9 Casey 124.

We are of the opinion that the plaintiff was entitled to recover.

Judgment reversed, and judgment is entered in favor of the plaintiff upon the case stated.