# Furbush *versus* Greene & Co.

1. Sheriff's sales of personal property in mass may be evidence of fraud, but they are not fraudulent *per se*.

2. B. confessed judgments for $22,701.89 to C., who the same day issued execution thereon. The sheriff levied on machinery and goods belonging to B., and sold them at sheriff's sale for $15,115, C. being the purchaser. Subsequently A. issued an attachment execution against B., and served C. as garnishee, claiming that the sheriff's sale was

fraudulent and void. Upon the trial in the Court below, in support of this claim, A. proved that the sheriff sold the machinery in one lump, and the goods in another; that there were but two bidders, and the sale lasted but twenty minutes; that B. was C.'s son-in-law; that at a meeting of B.'s creditors, C. stated that the sheriff's sale would not take place until he came back from New England, and that it did take place two or three days prior to his return; and that both B. and C. wrote to the creditors that C. had agreed to husband all of B.'s effects, and that it mattered not what the goods were bought in for at the sheriff's sale, C. would receive only his net claim, and the rest would be distributed among his creditors:

*Held,* that the evidence was insufficient to prove fraud, and should not have been submitted to the jury.

3. Klopp *v.* Witmoyer, 7 Wright, 219, distinguished.

January 26th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK JJ.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of July Term, 1884, No. 40.

Attachment sur judgment, by Edward A. Greene and Eugene Van Loan, trading as E. A. Green & Co., against Josiah B. Seybert, defendant, and Merrill A. Furbush and Charles A. Furbush, trading as M. A. Furbush & Son, garnishees. As to the defendant and Charles A. Furbush, the sheriff returned *nihil habet.* Plea, by Merrill A. Furbush, *nulla bona.*

Upon the trial the following facts appeared: On October 19th, 1881, Josiah B. Seybert confessed judgments to M. A. Furbush & Son to the amount of $22,701.89, and the same day execution was issued thereon. The sheriff levied upon the stock of goods and machinery in the defendant's factory, and on October 29th, 1881, sold them at sheriff's sale for $15,115, the purchaser being M. A. Furbush & Son. On November 26th, 1881, E. A. Greene & Co. issued this attachment execution against Seybert which was served upon Furbush & Son as garnishees, the plaintiffs claiming that the said sheriff's sale was fraudulent and void, and the title to the goods sold still in Seybert. In support of their claim they proved by several witnesses that the machinery was first sold in a lump, and then all the goods, the contents of the sales room, consisting of a quantity of shawls, some in cases and some on the counter, were sold also in a lump. That there were but two bidders, and that the sale lasted but twenty minutes. It was also in evidence that Seybert was the son-in-law of M. A. Furbush; that at a meeting of Seybert's creditors prior to the sale it was stated by Furbush that the sheriff's sale would not take place until he came back from New England, and that it did take place two or three days prior to his return; also a letter of Seybert's and one from Furbush & Son, to the effect that Furbush & Son had agreed to husband all of Seybert's effects that

[Furbush v. Greene.]

came into their hands, and dispose of them to the best advantage; that it mattered not what the goods were bought in for at the sheriff's sale, Furbush & Son would receive only their net claim, and the rest would be distributed among the creditors.

The garnishees requested the court to charge as follows:—

1. Under the evidence in this case there can be no verdict for plaintiffs.  *Refused.*  (First assignment of error.)

2. "Though you find that the garnishees, Furbush & Son, as execution creditors of the defendant Seybert, bought goods at the sheriff's sale described by plaintiffs' witnesses, you cannot without proof of their subsequent sale or conversion by garnishees, give a verdict against them under the present attachment.

*Answer.*  "If the jury find from the evidence in this case that this sale made by these garnishees was a fictitious sale, that is, that large quantities of the goods were sold in a lump, I charge you that the sale was void and of no effect.  There is evidence that certain executions of the garnishees were in the hands of the sheriff's deputy, who levied on goods in the factory of the defendant.  Some of the witnesses say $5,000 of these goods were sold in one room in mass and without being divided into lots.  If the sale was not conducted according to law; if the sale, especially of the lot in that one room, was so conducted as to disregard a subdivision into lots, it was invalid and void; that, however, would not afford the plaintiffs any right in this action, unless the jury also find that the goods were bought by the garnishees; if, however, the goods passed into the possession of the plaintiffs in the executions who are the present garnishees, then, in my opinion, if you find the facts I have stated, the plaintiffs here are entitled to a verdict in this case."  (Second and third assignments of error.)

Verdict for the plaintiffs for $1710.09, and judgment thereon.  Whereupon Merrill A. Furbush, one of the said garnishees, took this writ, making the above assignments of error.

*Frank P. Prichard* and *John G. Johnson* (*John H. Sloan* with them), for the plaintiff in error.  No case holds that a sheriff's sale of "large quantities of the goods sold in a lump" is void.  The sheriff exercised his discretion as to the manner of making the sale, which discretion could not be controlled by the execution creditor.  Any one injured thereby could move to set the sale aside before its final confirmation.  After that it cannot be attacked except on the ground of fraud.  A lumping sale may be irregular, but it is not fraudu-

lent *per se.* A void sale passes no title, but an irregular sale can only be questioned by those whose rights are coexistent with it. The law presumes that a public sale is made in good faith. This presumption stands unless overthrown by clear and satisfactory evidence of fraud. Barton *v.* Hunter, 5 Out., 411; Smith *v.* Meldren, 11 Out., 348. Sales *en masse* though voidable are not void. Freeman on Executions, p. 296. The sheriff "is not bound to sell in all cases by the single article. He may and often should sell in lots or parcels." Klopp *v.* Witmoyer, 7 Wright, 221. A purchase at a sheriff's sale, unless followed by possession and conversion, does not render the purchaser liable for the price of the goods to the defendant in the execution, or to any one claiming in his right as a subsequent attaching creditor. After a conversion, only the balance of the purchase-money, after the debt to Furbush & Son had been deducted, could be attached.

*John Fallon,* for defendants in error.—*Primâ facie,* a lumping sale is not good. A purchaser who claims under such a sale ought to show the existence of circumstances that would justify it: Klopp *v.* Witmoyer, 7 Wright, 221. A conversion by the purchaser at a fraudulent sheriff's sale is not necessary to render him liable in an attachment execution by a defrauded creditor: Stewart *v.* McMinn, 5 W. & S., 100; French *v.* Breidelman, 2 Grant, 319.

Mr. Justice GORDON delivered the opinion of the court, March 9th, 1885.

We are inclined to the opinion that the answer of the court below to the defendant's second point was erroneous in that the jury was instructed that the sheriff's sale was fictitious and void if a large quantity of the goods, seized as the property of Seybert, was sold in a lump. Whilst the point itself could not be sustained, and was, therefore, properly refused, yet the statement as above set forth, and which was made part of the answer, was not, as we think, warranted by the facts of this case. The charge is in effect that the sale of a large quantity of goods in one lot or parcel is *prima facie* fraudulent and void. This is not the law; it has never been so ruled in this court. Such a sale may be evidence of fraud, but is not in itself fraudulent. As was said by Mr. Justice MERCUR, in Barton *v.* Hunter, 5 Out., 411, "The law presumes that a public sale is made in good faith. This presumption stands unless .overthrown by clear and satisfactory evidence of fraud or unfair means." In the case in hand, we can see nothing in the manner of conducting the sale of Seybert's goods which of itself tends to rebut this legal presumption of good faith. It

[Furbush v. Greene.]

is a mistake to suppose that the case of Klopp v. Witmoyer, 7 Wr., 219, supports the court below.

In this case two separate parcels of lumber with a coal yard and its contents were sold as a single lot, and it was this kind of a sale that was pronounced *per se* fraudulent. But Mr. Justice STRONG, who delivered the opinion, says: "Within certain limits, doubtless, the officer must exercise his own judgment. He is not bound to sell in all cases by the single article. He may and often should sell in lots or parcels; what lots or parcels must be left to his honest judgment." He also admits that cases may occur that would justify a sale by the aggregate of all the personal property seized in execution.

If then, the sheriff is to exercise his own judgment in this matter, how can the honest exercise of that discretion be called in question when he does sell in lots or parcels? So also, in the recent case of Yost v. Smith, Kline & Co., [9 Out., 628.] we held that when the goods of a store were divided into eight parcels and thus sold, the sale was good. The question was not the size of the lots, or whether of more or less value, but of the discretion of the officer so to sell them. In the case in hand, so far as we can gather, the goods were sold in two lots; in one was the machinery of the establishment, and in the other a quantity of shawls, some in cases, and others, perhaps samples, on the counters. Should these goods, the product of a large manufacturing establishment, in a commercial city like this, have been sold by the piece; auctioneered off day by day to the rabble which might happen to drop in? Certainly not, for no better way could have been devised for the sacrifice of this property. That is certainly not the way in which similar transactions are conducted in the wholesale trade, and why should a sheriff or other officer adopt a different rule? He must sell in lots or parcels, and if so who is to be the judge of the size and value of such lots? It is admitted in Klopp v. Witmoyer, that the circumstances may be such that a sale of all the goods seized in execution, in the aggregate, may be proper and advisable, but here, again, the sheriff must in the first instance judge of the propriety of such disposition of the property, and we think that it is only in a clear case that a court ought to be permitted to pronounce the exercise of a lawful discretion *per se* fraudulent. We are thus satisfied that the court was wrong in its instruction of the jury that, disconnected from other circumstances, a presumption of fraud might be raised from the character of the sale itself.

Neither do we see anything in the evidence as we have it before us that was calculated to impeach the *bona fides* of this transaction; there was enough perhaps to mislead a jury but nothing more, hence it should not have been submitted.

The judgment is reversed.