## Grim, Appellant, v. Reinbold.

[Marked to be reported.]

*Sheriff's sale of personal property—Lumping sale—Fraud.*

As a general rule in selling personal property under an execution the sheriff should sell in parcels. The practice of making a lumping sale of the property is ordinarily to be condemned.

The circumstances may be such that the sheriff in the exercise of a sound discretion is justified in selling the goods as a whole. The object in all cases is that the highest price may be realized and, under some circumstances, this may be best effected by a lumping sale, but such a condition is unusual.

*Lumping sales—Fraud.*

Where it appeared that the sheriff under an execution for a debt which had been reduced by payments on account until a balance of $26.00 only remained due, proceeded to sell in lump the entire stock in trade of the defendant, which it was testified was worth at least $1,400 or $1,500, for

the sum of $26.00, there being other evidence in the case of an agreement between the purchaser and the defendant that the defendant was to be given an opportunity to redeem his property, which the purchaser subsequently denied:

*Held,* That it was not error to submit the case to the jury upon the allegation that the sale was fraudulent in character.

Argued March 8, 1892.    Appeal, No. 53, July T., 1891, by plaintiff, Jacob L. Grim, from judgment of C. P. Northampton Co., June T., 1886, No. 3, on verdict for defendant, Charles H. Reinbold.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Replevin for goods bought at sheriff's sale.

The facts appear by the opinion of the Supreme Court and the charge of the court below, SCHUYLER, P. J., which was as follows:

" This is an action by Jacob L. Grim against Charles H. Reinbold, to recover possession of one truck wagon, a lot of dressed and undressed marble, a lot of bluestone, a lot of flagging, etc.    It is undisputed that all this property, except the truck wagon, originally belonged to Charles H. Reinbold, the defendant.

" [The plaintiff, Jacob L. Grim, claims title through a sheriff's sale under an execution issued against Charles H. Reinbold. The fact of the sale is admitted.    But the defendant claims that it was a fraudulent sale, and the question in this case is whether the sale was fraudulent or not.

" The law presumes that a sheriff's sale is made in good faith, and this presumption stands unless overthrown by clear and satisfactory evidence of fraud or unfair means.    The defendant claims that there is such evidence before you.

" In support of his charge of fraud, the defendant relies, in the first place, on the admitted fact that the property was sold in a lump.    Standing alone this would not make the sale fraudulent.

" The defendant relies, in the second place, on the fact which is also virtually admitted, that the property was sold for much less than its fair value.    Here again I say to you that this fact, standing alone, would not make the sale a fraudulent one.    But both of these facts are legitimately before you as bearing on the question of fraud.

" In further support of his charge of fraud, the defendant has introduced evidence to show that Jacob L. Grim agreed to buy in the property for the defendant's benefit. This Grim stoutly denies. But even if you should find that such an agreement was actually made, I say to you again that that fact, standing alone, would not constitute the sheriff's sale a fraudulent sale. To have that effect you would have to further find that the agreement was a trick on the part of Grim to obtain the property for less than it would otherwise have sold for, and that the trick was successful. There is no evidence to support such a finding. If, however, you should find that such an agreement was actually entered into by Mr. Grim, then it will be proper for you to take that fact into consideration and to give it such weight as in your judgment it is entitled to in connection with the other facts and circumstances in the case in determining whether the sheriff's sale was fraudulent or not.] [11]

" [If you find that the sheriff's sale was fraudulent you will return a verdict in favor of the defendant. If you find that the sale was not fraudulent then you will render your verdict for the plaintiff.] [12]

" The property in controversy was delivered to Mr. Grim on April 15, 1886, and he has had possession of it ever since. Should your verdict be in favor of the defendant you will allow him such damages as you may find he is entitled to for the detention of the property by the plaintiff from April 15, 1886, down to the date of your verdict."

Plaintiff submitted a number of points which were refused by the court.

Verdict for defendant. Plaintiff appealed.

*Errors assigned* were, among others, (11, 12) the portions of the charge in brackets, quoting them.

*W. S. Kirkpatrick, J. B. Kemmerer* and *M. Kirkpatrick* with him, for appellant.—Defendant having been present and consented to a lumping sale, cannot afterwards move to set it aside on that ground: In re Chartier's Coal Co., 1 Pitts. 87.

Mere inadequacy of price is no ground of itself for setting aside a sheriff's sale: Carson's Sale, 6 Watts, 140; Young's Ap., 2 P. & W. 380; Smith v. Meldren, 107 Pa. 348; Yost v.

Smith, 105 Pa. 628; Klopp v. Witmoyer, 43 Pa. 226; Furbush v. Greene, 108 Pa. 503.

There should have been no recovery in replevin; for granting that there was an executory agreement with Grim to transfer the property to Reinbold, the intention being manifest from the undisputed facts that the property was not to pass at the time of the making of the contract, the title remained in the vendor, and a failure to perform, or a breach of the contract remitted the other party to this action for damages: 1 Parsons on Contracts, 528; 1 Benjamin on Sales, secs. 308–9, 366, 425; Hatch v. Oil Co., 100 U. S. 124; Terry v. Wheeler, 25 N. Y. 520; Enlow v. Klein, 79 Pa. 488; Hartley v. Decker, 89 Pa. 470; Edwards' Ap., 105 Pa. 103; Sneathen v. Grubbs, 88 Pa. 147.

Assuming the truth of defendant's contention, there is no evidence of any tender made to the plaintiff, while to sustain his contention, defendant should have made a tender continuing until the trial of the case with the money brought into court: Summerson v. Hicks, 134 Pa. 566; Gallagher v. Burke, 4 Del. 136; 5 Kulp, 392.

*H. C. Cope, John Kline* with him, for appellee.—The sale in a lump, under the facts in this case, was void at law: Klopp v. Witmoyer, 43 Pa. 219; Yost v. Smith, 105 Pa. 632; Smith v. Meldren, 107 Pa. 351; Rowley v. Brown, 1 Binn. 61.

The property was sold for such a grossly inadequate price as to raise a presumption of fraud. The testimony was that the stock was worth from $1,500 to $2,000, but it was sold in a lump for $26.00, not one fiftieth part of its value. "In a clear case of inadequacy of price, the court will seize hold of a slight irregularity to set aside a sale: " Cooper v. Wilson, 96 Pa. 414; Gobrecht v. Diffenbach, 2 Lanc. Bar, 25.

OPINION BY MR. JUSTICE GREEN, April 11, 1892:

The undisputed evidence in this case shows that the writ of execution, under which the defendant's goods were sold by the sheriff, was for the sum of $106 and costs, and that on the morning of the day of sale the defendant paid to the sheriff the whole of the principal of the debt, and asked a little time in which to raise the amount of the costs, $26.00. His request was refused, and the sheriff proceeded to sell, and did sell, at once,

the entire stock in trade of the defendant, consisting of coping-stone, flag-stone, marble, dressed and undressed, finished grave-stones and head-stones, a truck wagon and tools, in one lump, without the least division into parcels. This stock, it was tes-tified by the defendant and his son, consisted of a large num-ber of individual articles, and it was admitted by the plaintiff, and proved by a number of witnesses, that the plaintiff, who purchased it all, was engaged during parts of two days, with at least one four-horse team and two two-horse teams, in remov-ing it from the possession of the defendant. The defendant, describing particularly the articles removed, testified that, in his opinion, they were worth from fourteen to fifteen hundred dollars, exclusive of one list of articles, which he had mislaid or lost; and his son testified that the whole stock was worth two thousand dollars. It is perfectly manifest, from the whole of the testimony, that the sale of a few of the articles would easily have yielded money enough to pay the few dollars of costs remaining unpaid on the fi. fa. The sale occupied but a very few moments, and we cannot but regard it as having been conducted with most unseemly haste, and with a willful and wanton disregard of the plain rights of the defendant. There were no circumstances in the case requiring such extreme haste, and none which can, in the least degree, justify the sale of the entire stock in one lumping bid. We are clearly of opin-ion that the case is brought completely within the decisions of this court, which hold that lumping sales of property, under writs of execution, without justifying circumstances, are void, and confer no title on the purchaser. In the case of Rowley v. Brown, 1 Binn. 61, in which three parcels of real estate were sold in one body, we said: "It is the rule of this court to dis-allow, in every case, a lumping sale by the sheriff, where from the distinctness of the items of property he can make distinct sales. It is essential to justice, and to the protection of un-fortunate debtors, that this should be the general rule; any other would lead to the most shameful sacrifices of property. There may be exceptions, but the purchaser must bring him-self within them. The present case is not one; the tenements and lots were here sufficiently distinct, both in law and fact, and there was no reason for deviating from the common practice."

In the case of Klopp v. Witmoyer and Arentz, 43 Pa. 219,

the whole subject of lumping sales by sheriffs was reviewed by Mr. Justice STRONG, and the practice of selling in parcels, where it is practicable, was approved and enforced. The contrary method of selling in a lump was distinctly condemned, and such a sale, made in that case, although the purchasers' bid was $5,700, and the goods were only appraised at $6,000, was declared to be illegal and void as a matter of law. In the course of the opinion Justice STRONG said: "There may be circumstances that would justify a sale by the aggregate of personal property seized in execution. There were such in Tifft v. Barton ; but a purchaser who claims under such a sale ought to show their existence. Prima facie the sale is not good. No circumstances were shown in the present case to justify a departure from the common rule, that the sheriff must sell separately or in parcels, and we think, therefore, there was error in the unqualified instruction given to the jury, that there were no such irregularities in the sale as to render it void." We held the third point of the plaintiff, which required the court to declare the sale void in law, should have been affirmed. The plaintiff in the execution was himself the purchaser, and his counsel gave directions to the sheriff to sell in a lump, but we held that such instructions were illegal, and the sheriff had no right to obey them. That the lumping sale was evidence of fraud in fact went without saying. The case of Rowley v. Brown, supra, was cited and followed in the opinion. Neither of these cases has ever been shaken. On the second trial of Klopp v. Witmoyer it was abundantly proved that the defendant in the execution had fully ratified and confirmed the sale by remaining in possession of the goods and selling them out as the agent of the purchaser, and that he also fully consented to the sale at the time it was made. It was therefore held binding upon him and his general creditors, but the former decision was approved in the opinion of LOWRIE, C. J., who said: "Now this sale was by the sheriff, as an agent or minister of the law, and we have declared it void, because he departed from the proper forms of the law in making it. The consequence is that he must be treated as a mere unauthorized agent. He did sell that property as matter of fact, but the sale was void for want of authority from the law or from the owner. All it wanted was authority from one or the other."

The case of Furbush v. Greene, 108 Pa. 503, does not impair Klopp v. Witmoyer. On the contrary, the latter case was held to be inapplicable to the facts of the former. The amount of the judgments upon which execution was issued in Furbush v. Greene was $22,701.89. The property levied upon was a large stock of manufactured shawls, and a quantity of machinery. The stock of goods was sold by itself, and the machinery separately. The sales amounted to $15,115. Stress was laid by Mr. Justice GORDON, in the opinion, upon the fact that the goods consisted of a large stock of manufactured goods intended for the wholesale trade, which could be sold with much better advantage at wholesale than at retail. The circumstances proved were regarded as showing a proper case for the exercise of a sound discretion by the sheriff as to the manner of the sale in this respect, and it was not considered that there were any circumstances of actual fraud in the case. The case of Klopp v. Witmoyer was recognized and distinguished by its facts. In the present case the facts are entirely similar to those in Klopp v. Witmoyer when first heard, and not at all similar to those in Furbush v. Greene. The amount for which the sale was made was only $26. The stock sold was testified to be of the value of $1,400 to $2,000. The stock was not at all intended for wholesale trade, but essentially for retail. It consisted of a large number of individual items, besides a truck-wagon shown to have cost over $200. The defendant did not at all agree to the sale, but urged the sheriff to sell one pile of stones, which he testified was worth from $75 to $100. In Furbush v. Greene, the total value of the property levied upon was less than the judgment debts. In the present case, if the testimony as to the value of the property is believed, and that is for the jury, it was worth more than fifty times the amount of the debt at the lowest estimate. Moreover, there were oral communications between the sheriff and Grim, the purchaser, before the sale, and it was testified that the sheriff's deputy suggested at the sale that Grim should buy the goods then and surrender them afterwards to Reinbold upon the amount of the bill being repaid to him. Reinbold and his son testified that Grim substantially agreed to this, and said that he would come the following Saturday to Bethlehem to receive the money from Reinbold.

It was also testified by Reinbold, that Grim evaded him on that day, so that he could get no opportunity to pay him the money, and that, on the following Monday, when Grim replevied the goods, and was about to remove them, he tendered Grim the money, which was refused, and the goods were removed. It is of no consequence that Grim denied much of this, because the matters disputed raised a question of fact which was properly referred to the jury, and by them decided upon all the testimony, which, of course, was exclusively for their consideration. The suggestion by the sheriff or his deputy, that Grim should buy the goods and surrender them to Reinbold upon the payment to him of the amount of his bid, was testified to, not only by Reinbold, but also by his son, and substantially by Yerkes, the plaintiff in the execution. He said, " They seemed to be in a hurry. Mr. Reinbold said that he would go down to his house and get the $26 if they would give him time. They did not give him time to get the money. Mr. Reinbold asked Grim for the $26. Grim promised to do so if the property was sold to him as security; I know of this understanding." If the testimony of the defendant, and his son, and Yerkes, is believed, we cannot say that, as a matter of law, there was no proof, taking into account the other circumstances of the case, tending to show a fraudulent sale by the sheriff. The principal circumstance, of course, was the sale of the entire property levied upon, in one mass, to pay so very small an amount, when it was perfectly easy to sell in parcels, and when the probability is so very great that the sale of a few parcels would have realized enough to pay the remainder of the money due upon the execution. The evidence of actual collusion between the plaintiff and the sheriff is very slight indeed, not at all sufficient of itself alone to establish the allegation. But if Grim bought the property in the circumstances testified to by Reinbold and his son, it would be evidence of fraud on his part to refuse to surrender the property upon a tender of the money; it would be making a wrongful use of the title he acquired by the sale. Upon a review of the whole case, we are of opinion that the learned court below was not in error in submitting the case to the jury upon the allegation that the sale was fraudulent in its character.

The assignments of error are not sustained.

Judgment affirmed.