## The First National Bank of Cresson v. Boes et al.

*Leech & Hibbs* and *Morgan W. Evans*, for plaintiff.

*P. J. Little*, for defendant.

REED, P. J., O. C., specially presiding, January 12, 1931. — The First National Bank of Cresson, Pennsylvania, held a judgment against Edward Boes, William Boes and Albert Boes on which the above writ of execution was issued and the sheriff levied upon three pieces or parcels of land as follows: All the right, title and interest of the three defendants in a piece or parcel of land situate in Allegheny Township, containing forty-three acres and ninety-five perches; and also a second piece of land situate in Allegheny Township, containing forty-four acres and fifty perches; and he also levied upon all the right, title and interest of Albert Boes in and to a certain piece or parcel of land situate in Allegheny Township, containing 120 acres, more or less. There were three judgments of record against the defendants. No application was made to the court prior to the sale to have the property sold in any

particular manner, but, at the time of the sale, when the sheriff was about to offer the property, counsel for Albert Boes requested the sheriff to sell the title and interest of Albert in the third tract levied upon separate and apart from the other tracts. Thereupon counsel for the execution creditor directed the sheriff to offer all of the pieces separately and then all together, and to sell in the manner in which the greatest amount of money or highest bid would be secured. The sheriff, thereupon, offered the first tract and received a bid of $100; he offered the second tract and received a bid of $100; and, lastly, he offered the third tract, for which a bid of $100 was received. The first two pieces were then offered together and a bid of $250 was received, and the third one separately and a bid of $100 was received. All of the properties were then offered together and a bid of $2551 was received and the property was knocked down to M. D. Kittell, Esq. The property was sold on June 2, 1930, and, on the Monday following, Albert Boes presented his petition to the court asking that the sale be set aside and that an order be made directing that the third property be sold separately from the first and second, for the reason that the petitioner was interested only in the third property and there were bidders present who desired to bid only on the third tract of land; that the petitioner had objected to the sale of the tracts all together; that the third piece of land did not adjoin the first and second pieces; and that Albert Boes had no interest whatever in the first and second pieces of land offered for sale. The petition also recited what had taken place at the time of the sale as indicated above, as to the offering of the properties separately and together.

Counsel for the execution creditor, The First National Bank of Cresson, Pennsylvania, filed an answer substantially admitting the facts as alleged in the petition, but alleging that all bidders were given an opportunity to bid upon each of the properties separately, and first and second together and the third separately, and then all together, and that the highest bid was received for all of the properties together. The answer also calls attention to the fact that the petition does not offer any assurance that a greater or even an equal sum would be obtained if the resale was ordered and the third property sold separately from the others, nor does the petition allege that the properties were sold for an inadequate price.

The petitioner contends that as a matter of law the sheriff was bound to sell the third tract separately, and that the sale is void because the properties were sold together, and calls attention particularly to the cases of Norris v. Adams, 13 Phila. 111, and Williams v. Klein, 9 Kulp 442. Upon examining the case of Norris v. Adams, we find that the record states that the properties were advertised to be sold separately. In the present case, they were not advertised to be sold separately; they were in fact separately described in the advertisement, but were all sold on one and the same writ, with no particular indication that they would be sold separately. The second fact to be noted is that it is alleged that the properties were sold free of encumbrance for $1000, while the testimony showed they were worth at least $18,000. Judge Ludlow, in disposing of the matter before him, ordering a resale, says that he does so because the properties were advertised to be sold in an entirely different manner from that in which they were sold, and, therefore, the purchasers may have been kept from bidding. In the present case, the properties were offered for sale in the manner requested by counsel for the petitioner, but were sold together because they brought the highest price when offered in that manner.

In the case of Williams v. Kline, *supra*, the sheriff sold in a lump a number of lots of ground. This case decides nothing except that where the sheriff has levied upon a piece of ground divided into lots, he ought in good faith to offer the lots separately, and suggests that the sheriff should have levied upon the

properties separately and offered them in that way. The sale was set aside on the ground that it ought not to have been sold in the manner in which it was advertised, which lumped the lots together.

Neither of the above-cited cases nor the other cases cited conflict with the true rule which applies in the case of separate pieces of real estate levied upon and sold by the sheriff. The true rule is stated in Freeman, Void Judicial Sales, § 39, where he says: "The duty of an officer in making a sale is to offer the property in such parcels as will prove most inviting to the bidders, and realize the greatest sums for the heirs and other interested persons. . . . Where several distinct parcels of land are to be sold, each ought to be offered and sold separately, unless it is clear that the union of two or more will augment rather than decrease the aggregate proceeds of the sale." This same author, in his work on executions, § 296, in discussing the subject of the sale of property *en masse* on executions, says: "Where several distinct parcels of real estate, or several articles of personal property, are to be sold, what is called a 'lumping sale' can rarely be justified. Such a sale, when objected to in due time, will not be upheld unless special circumstances can be shown from which it must be inferred that such sale was either necessary or advantageous. It is sometimes said that such a sale will not be vacated until it is shown to have injured someone. But when two or more distinct lots are to be sold, the officer should always endeavor to sell them separately, unless it is clear that they will bring more if offered together."

In the case of Smith *v.* Meldren, 107 Pa. 348, Mr. Justice Mercur states the true proposition as follows: "It may be conceded as a general rule, in case of a sale of chattels on execution, the sheriff should sell the articles separately or in parcels. This, however, rests on the assumption that the property would thereby produce a larger sum than if sold in a lump."

In the case of Baker *v.* The Chester Gas Co., 73 Pa. 116, Mr. Justice Mercur says, on page 120 of the opinion: "Upon a sheriff's sale of land the general rule prescribed by public utility is that different lots of ground should be sold separately. The reason is that the competition is thereby much increased; many persons might desire to purchase *one*, who would not, or could not purchase several. The primary object of selling at sheriff's sale is not to transfer the title; but to collect the money."

In In re Sale of Erb's Estate, 2 Pearson 160, it is said: ". . . and after a full trial it is proved that it will command a higher price when sold together than separately, it is lawful to so sell it. Nothing short of a fair trial and full proof that it will so sell to more advantage will justify the officer in thus making sale.

"The effort so made takes it out of the general rule, which then ceases."

The case of Rowley *v.* Brown, 1 Binney 61, which is sometimes cited as authority for the proposition that lumping sales are void, we find after an examination, shows merely a statement of the general rule, which is that the property should be sold separately, but recognizes the true principle—that properties shall be sold so as to bring the highest price for the benefit of the creditor as well as the debtor. In this particular case, the Supreme Court, in the *per curiam* opinion, said: "There may be exceptions, but the purchaser must bring himself within them. The present case is not one; the tenements and lots were here sufficiently distinct both in law and fact, and there was no reason for deviating from the common practice."

The case of Klopp *v.* Witmoyer et al., 43 Pa. 219, contains a rather full discussion of this subject, but a careful reading discloses that the general rule is recognized as well as the exceptions, and the true rule is the greatest benefit to the debtor and creditor by securing the largest price.

In the present case, if, as stated in the petition and in the argument, Albert Boes was willing to bid more money on the property of which he says he alone was the owner, there was nothing to prevent his making the bid in the full amount of the indebtedness. To permit the debtor to defeat the creditor's right by insisting on separate sales of the property when the result would be that a less sum of money would be received to liquidate the indebtedness than if they are sold together would result in permitting a debtor to perpetrate a fraud upon his creditor, and that is farthest from the intention of the law. The fact is that the property of the debtor was liable for the full amount of the indebtedness as well as two other properties upon which the sheriff had levied, and right and justice could only be done between debtor and creditor by the sheriff selling the property for the highest price which it would bring. In this case the admitted facts show that every effort suggested by the petitioner or by counsel for the execution creditor was tried by the sheriff in order to secure the highest price for the property and thereby liquidate as great an amount of the indebtedness as possible. We are of the opinion, therefore, that the rule should be discharged and the sheriff's sale confirmed.

### Decree.

And now, January 12, 1931, after due consideration, the rule to show cause why the sheriff's sale should not be set aside is discharged, and the same made by the sheriff is confirmed.

From Henry W. Storey, Johnstown, Pa.