## Sholl *v.* Stump, Appellant.

*Canals—Eminent domain—Easement—Act of April 2, 1811, sec. 13, P. L. 226—Union Canal Company.*

Under the Act of April 2, 1811, P. L. 226, incorporating the Union Canal Company, land acquired by the company, not from the earlier companies of which it was the consolidation, and not from any agreement with, nor purchase from, landowners, but by condemnation proceedings under section 13 of the act, is not acquired in fee simple, but only as an estate determinable upon the abandonment of the land for use as a canal.

48, (1903).]     Statement of Facts—Opinion of Court below.

Argued Nov. 9, 1903.    Appeal, No. 165, Oct. T., 1903, by defendant, from judgment of C. P. Berks Co., Dec. T., 1899, No. 31, on verdict for plaintiff, in case of Henry Sholl v. Henry Stump.    Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ. Affirmed.

Trespass quare clausum fregit.    Before Endlich, J.

At the trial the court instructed a verdict for plaintiff subject to a question of law reserved.

On a rule for judgment for defendant non obstante veredicto, Endlich, J., filed the following opinion:

The Union Canal Company was incorporated by act of April 2, 1811, consolidating the Schuylkill & Susquehanna Navigation Company, created by act of September 29, 1791, and the Delaware & Schuylkill Canal Company, created by act of April 10, 1792: See Union Canal Company v. Young, 1 Whart. 410. In 1827 the Union Canal Company occupied a portion of property belonging to Christopher Reed (or Rieth), under authority conferred by section 13 of the act of 1811, acquiring the same not by purchase, but by condemnation. · Damages were assessed and paid to the owner under a proceeding instituted by him in accordance with the provisions of that section.    On the property appropriated a dam was subsequently errected.    By deed of December 18, 1846, Christopher Reed conveyed certain land within whose boundaries that property was comprehended, and by successive grants the title thus conveyed has come down to plaintiff.    It is a matter of history that the operation of that portion of the canal has long since been abandoned.    In pursuance of a decree made in the Supreme Court of this state, the property of the Union Canal Company was sold in 1885 and became the property of the Schuylkill & Middletown Canal Company.    The latter being shortly thereafter dissolved, trustees were appointed by this court to sell. · They conveyed to Gordon Chambers, on November 24, 1891, a tract of land purporting to cover what is here in dispute, and after intermediate conveyances and reconveyances, he, on October 17, 1898, conveyed to Henry Stump, executor of Leah Stump, deceased, the dam above referred to.    This dam was taken down by defendants, claiming the right to do so under the conveyance last

mentioned. Thereupon this action of trespass was brought. The plaintiff contends that by its appropriation of Christopher Reed's land in 1827 and the proceedings incident to it, the Union Canal Company took an estate determinable upon the abandonment of the canal as a canal, and that thereupon the entire title to the land and the ownership of the dam erected upon it fell to the plaintiff as holder of the title granted by Christopher Reed's conveyance of December 18, 1846. The defendants, on the other hand, insist that the Union Canal Company, in 1827, acquired a fee simple in the land condemned which remained unaffected by the abandonment of the canal and passed to Leah Stump's executor by the conveyance of October 17, 1898.

The act of 1811, in sec. 1, repealing all the earlier acts relating to the companies merged in the Union Canal Company (saving to the latter's rights, etc, already acquired by those companies), it is clear that the question here presented must depend upon the construction to be given to section 13 of the act of 1811 in accordance with its language and in view of established principles applicable to provisions of this sort. It is not settled by the decision in Union Canal Company v. Young, supra. That concerned rights vested before the consolidation, under the act of 1792, which, in sec. 8, makes the title passing by condemnation as complete " as if the same had been granted . . . . by the respective owners," and moreover involved a title acquired by agreement and not by condemnation. Nor does it seem to be settled by the decisions in Haldeman v. Pa. Cent. R. R. Co., 50 Pa. 425, and the cases following its lead (Craig v. Allegheny, 53 Pa. 477 ; Robinson v. R. R. Co., 72 Pa. 316 ; Wyoming Coal, etc., Co. v. Price, 81 Pa. 156 ; Canal & R. R. Co. v. Billings, 94 Pa. 40 ; Smucker v. Penna. R. R. Co., 188 Pa. 40, 42 ; Penna. Canal Co. v. Lewisburg, etc., Ry. Co., 10 Pa. Superior Ct. 413), all of which involved titles acquired by the state under Acts of February 25, 1826, P. L. 55, and April 9, 1827, P. L. 192, for the construction of state canals. The reasoning upon which these decisions proceed is fully and unmistakably developed in them, and is of such a nature as to make them essentially inapplicable to any other class of cases. It is enough to observe here that it is not based solely upon verbal interpretation of the statutes in question, but also upon the peculiar circumstance that it was

the commonwealth that acquired title to the land, and upon considerations of public policy so intimately involved in the entire scheme that legislation was intended to serve as to remove any possible doubt concerning the proper understanding of its detailed provisions.

Section 13 of the act of 1811, provides that it shall be lawful for the president and managers of the Union Canal Company " to enter into and upon " lands supposed to be the proper route for the canal, and that it shall have the "powers to purchase so much land along the tract of the canal and adjacent thereto, and tenements, mills, mill-ponds, water, water-courses, or other real hereditaments as shall in their opinion from time to time be necessary; and in default of purchasing it shall be lawful for the courts of quarter sessions . . . . on the application of the owner of the said ground, or of the said president and managers, to appoint three suitable and judicious persons . . . . in order to ascertain and report to the said court what damages if any have been sustained by the owner of the said grounds by reason of the said canal or other works; . . . . and it shall be the duty of the jury, in valuing any lands, tenements or hereditaments, to take into consideration the advantage derived to the owner or owners of the premises from the said navigation passing through the same."

There is no question that the canal company had the power of acquiring an absolute estate in land. Section 2 of the act of 1811 expressly sanctions its " purchasing, taking and holding to them, their successors and assigns in fee simple or for any lesser estate, all such lands, tenements and hereditaments as shall be necessary for them in the prosecution of their works; " and when section 13 regrants the power to " purchase " such lands as shall in their opinion be necessary, it evidently has in view the same sort of purchase that is spoken of in section 2, viz : a purchase in fee simple or for any lesser estate. Whether in any instance the acquisition under this power of purchasing is to be regarded as an acquisition of a fee simple or of a lesser estate must, of course, depend upon the terms of the contract as evidenced by the conveyance; for the statute does not exact a purchase of any particular estate, but leaves its quantum to the parties dealing with each other. But here we have no contract and no conveyance. The question here is whether,

in the absence of any agreement between the parties as to the interest to be acquired by the canal company, and where the latter enters upon land under the right of eminent domain and the owner must be satisfied with damages assessed to him under the statute for such entry, the canal company by payment of such damages acquires a fee simple in the land or a lesser estate. That the company is permitted to purchase in fee simple is certainly not conclusive of that question. See Pittsburg, etc., R. R. Co. v. Bruce, 102 Pa. 23, 34. A purchase is a contract which involves the assent of the landowner to its terms. The right to enter subject to the payment of damages assessed under the statute is given "in default of purchasing," i. e., in the absence of any contract. What the canal company might acquire by agreement with the landowner is, therefore, one thing ; what it would acquire in default of such agreement may be a wholly different thing. The nature of the estate capable of being acquired in the one case throws no light whatever upon the nature of the estate actually acquired in the other ; and it is with the latter only that we are concerned.

At the very threshold of the present inquiry—what estate the canal company could take by virtue of the right of eminent domain under section 13, act of 1811—lies the fundamental proposition, so unequivocally laid down in Jessup v. Loucks, 55 Pa. 350, at p. 361, that "private property cannot be taken for private use," and that, therefore," when private property is taken for public use by a corporation invested with the right of eminent domain, if that use ceases it returns or reverts to the owner of the soil from whom it was taken." Is there anything in the language or provisions of the statute here controlling that could make this principle inapplicable ? It seems not ; more especially so, when the rule is borne in mind that, as between the corporation and the landowner, the rights of the former are to be strictly construed : R. R. Co. v. Bruce, supra, p. 33. The canal company is given the right to "enter into and upon " the lands to be used for canal purposes. In itself, that phrase implies nothing more than a right of occupancy for such purposes : Western Penna. R. R. Co. v. Johnston, 59 Pa. 290. The owner, on the other hand, is to be paid the damages sustained by him "by reason of the said canal or other works, it being made "the duty of the jury, in valuing any lands, tene-

ments or hereditaments, to take into consideration the advantage derived to the owner or owners of the premises from the said navigation passing through the same." A canal, viewed as something from which one through whose land it is cut may derive an advantage, is not a mere ditch, an excavation. In the language, here peculiarly pertinent, of Mr. Chief Justice WAITE in Kennedy v. Indianapolis, 103 U. S. 599, at pp. 604–5:

" A canal in the sense which that term implies in this connections means a navigable public highway for the transportation of persons and property. It must not only be in a condition to hold water that can. be used for navigation, but it must have in it, as part of the structure itself, the water to be navigated ready for use. . . . There must be a canal fitted in all respects for navigation and open to public use before the benefits can accrue to the owner which are under the law to overcome his claim for damages."

It is for the injury done him by the location upon his land of such a canal, such a highway, that the act of 1811 allows the owner compensation. It is to that injury that his right to demand damages is restricted by the statute. And as if to emphasize the idea that it has in view a canal as a going concern, operated as such and continuing in use as such, it provides that the benefits to be considered are those arising, not from the mere presence of a construction that may or may not be operated as a canal, but from the passage of navigation through the land, i. e., from the use of the canal as a public highway. In short, the owner must be paid damages on the footing that the canal was to continue open to navigation and, therefore, capable of affording conveniences and conferring benefits—not in contemplation of its becoming a dead incumbrance upon his land, a permanent obstruction to the convenient use of it, besides being a deprivation of so and so much land. For such a taking of his land, it needs no argument to show that Christopher Reed never was and, under the act of 1811, could not be compensated, and the canal company never paid. Consequently he cannot be held to have parted with, nor the company to have acquired, such an absolute estate in it by virtue of that statute, as it necessarily implied in the idea of such a taking. See R. R. Co. v. Bruce, supra, p. 34. It must, on the contrary, be true that what Christopher Reed

was deprived of and what the canal company paid him for and acquired was simply the use, together with such an estate as was needful to support the use of the land for the purposes of the canal while in operation. That use and that estate might, indeed, be perpetual if the canal should continue perpetually to be operated as a canal. But upon the cessation of its use as such, in a word, upon the abandonment of the canal, the estate acquired by the canal company inevitably determined, and the land reverted to Christopher Reed or those then standing in his shoes.

Such seems to be the unmistakable inference from the provisions of the act of 1811; and the conclusion reached under them is fortified by the decision in Spear v. Allison, 20 Pa. 200. That case arose under the Act of April 12, 1828, P. L. 297, incorporating the Delaware & Schuylkill Canal Company. Section 2 of this act, in language identical with that of sec. 2, act of 1811, empowers the company to purchase, take and hold lands, to them, their successors and assigns, in fee simple or for any lesser estate. Again like sec. 13, act of 1811, sec. 6, act of 1828, empowers the company to enter into and upon lands supposed to be proper for canal purposes and to buy land needful therefor, and provides a proceeding by a jury of view " to ascertain and report . . . . what damages, if any, have been sustained . . . . by reason of the said canal or other works,"adding " and it shall be the duty of the . . . . jury . . . . in valuing any land, tenements or hereditaments, or making an assessment of damages for other injuries or damages sustained, to take into consideration the advantage derived to the owner or owners of the premises from said canal or navigation passing through the same."

It is thus apparent that the language of the two enactments is almost literally the same. It was, however, determined in the case just cited that the canal company taking land by condemnation under the act of 1828 did not acquire a fee simple in it.

It follows that the instruction to the jury in this case to treat the plaintiff's title to the property in question as established was right, and that there can be no judgment non obstante veredicto under the point reserved.

The rule to show cause is discharged.

48, (1903).]    Assignment of Errors—Opinion of the Court.

*Error assigned* was in entering judgment for plaintiff on the verdict.

*W. K. Stevens*, of *Stevens & Stevens*, with him *W. B. Bechtel*, for appellant.

*George W. Wagner*, of *Wagner & Leidy*, for appellee.

. OPINION BY RICE, P. J., December 19, 1903:

The facts of this case are very clearly and concisely stated in the opinion filed by the learned judge below. The question is whether the Union Canal Company by its appropriation of the land in controversy in 1827 and the proceedings incident thereto, acquired an estate in perpetuity which it could dispose of in fee, irrespective of the fact of the abandonment of the canal as a canal, or an estate determinable upon the happening of that event. We think the learned judge was right in holding that the question here presented must depend upon the construction to be given to section 13 of the Act of April 2, 1811, P. L. 226. This conclusion seems irresistible when it is noticed that the act provided a complete scheme for the acquisition of land by the Union Canal Company for its canal, and expressly repealed "all acts and supplements heretofore passed in favor of the Schuylkill and Susquehanna Navigation and of the Delaware and Schuylkill Navigation." The provision securing to the new company incorporated by the act the right to "have, hold and enjoy all estates, grants, rights, interests and privileges heretofore held and enjoyed by them" (the former companies above mentioned) "under their former respective titles," is not inconsistent with the foregoing conclusion. This provision preserved vested property rights, but we are unable to conclude that it was intended to have any further effect, at least so far as the present question is concerned.

Counsel for appellant frankly concede that if the question is to be determined by the act of 1811 and that alone, an appropriation under its provisions gave to the canal company the same estate as a railway company would acquire under the general laws providing for the taking of private property for public use, and that upon the abandonment of the canal, the fee would revert to the owner. The correctness of this con-

cession, at least as applied to a case where it does not affirmatively appear that the company claimed to appropriate the fee and the landowner acquiesced in the assessment of damages upon that basis, is clearly and satisfactorily shown in the opinion filed by the learned judge below. He has also pointed out the distinctions between this case and the case of Haldeman v. The Pennsylvania Central Railroad Co., 50 Pa. 425, and other cases based upon a construction of the act of 1826, and has shown by the decision in Spear v. Allison, 20 Pa. 200, that the principles upon which it was held in those cases that the commonwealth acquired a fee, do not control in a case governed by statutory or charter provisions similar to those applying here. We fully concur in his conclusions, and can add nothing profitably to the discussion.

Judgment affirmed.