HIRAM WHITMAN & another *vs.* BOSTON AND MAINE RAILROAD.

If land is purchased by partners with partnership funds, for partnership purposes, and is not needed for the payment of debts, the title vests in the members of the firm as tenants in common; and after the death of one of them, a petition for damages sustained by reason of the location of a railroad upon it is properly brought in the joint names of his administrator and the surviving partner.

Proof of a written agreement to sell land to a railroad company for a specified price within a certain time, and of a tender of the amount within the time and a refusal to accept it, will not authorize the company to enter upon the land afterwards and locate their road upon the same, or defeat a petition for the damages sustained by reason of such location.

Proof of a deed of land, with a privilege in an adjacent canal, to the grantee and his heirs and assigns forever, is *prima facie* evidence of his title, and in the absence of controlling proof will authorize him and his assigns to recover damages for the destruction of a permanent easement therein, by the location and construction of a railroad, by which the same is filled up.

Under a deed conveying a lot of land bounded on a canal, and referring to a plan by which the boundary appears to be on the side thereof, together with a privilege in the canal, and an obligation on the part of the grantee, his heirs and assigns, to maintain the canal wall forever, and permission to drive piles against such parts of the wall as have projected into the canal, and to fasten land ties thereto to prevent any further pressure outwards, no right is acquired by the grantee to cover the ends of piles so driven with a platform; but a title is acquired to the land up to the walls of the canal as they then existed and were delineated on the plan.

If by reason of the location of a railroad over a part of a lot of land, and the filling up of an

Whitman & another *v.* Boston and Maine Railroad.

adjacent canal, in which the owner of the lot had a privilege, the value of the land was so enhanced that what afterwards remained of it was worth more than the entire lot was worth before, the owner has no claim for damages; and the omission so to instruct the jury, in compliance with the request of the respondents, in a petition for damages sustained by reason of such location and filling up, is a sufficient reason for setting aside a verdict for the petitioner.

*It seems* that in a petition for damages to land sustained by reason of the location of a railroad, evidence is inadmissible of the nature, extent and amount of all the business done thereon, even for the purpose of showing, as one element of the market value thereof, how and to what extent it might be used by any one.

PETITION for a jury to assess the damages sustained by reason of the location of a railroad upon land of the petitioners, at the corner of Haverhill and Causeway streets, in Boston, and filling up an adjacent canal.

At the trial in the superior court, before *Russell,* J., it appeared that the estate upon which the railroad was located was purchased by Joseph H. Bartlett and Otis Minot, who were partners doing business under the firm of J. H. Bartlett & Co., with the partnership funds, and was intended for and used in the partnership business; that it was not needed for the payment of debts, and there were no outstanding debts; that it was conveyed to them as tenants in common; and since the filing of the original petition for damages before the mayor and aldermen of the city of Boston, by the two partners, Bartlett has died, and the present petition is in the name of his administrator and Minot.

The respondents put in evidence a written agreement dated April 1, 1844, by which J. H. Bartlett & Co. agreed to sell the lot of land in question to them for $20,000, if taken within thirty days from date; and a subsequent extension of the time therein granted, for thirty days more. It appeared that before the expiration of the time last fixed, the respondents tendered to J. H. Bartlett & Co. the sum of $20,000, and a deed of the lot to be executed by them, but they refused to execute the same; and the respondents were always ready to pay the said sum, and brought a bill in equity to enforce specific performance of the contract, which was subsequently dismissed. The location was filed on the 10th of June 1844.

The lot of land was bounded on one side by a canal which,

long before the purchase of the land by the petitioners, had been constructed by the Boston Mill Corporation, which owned the land over which the canal was laid out. The title of the petitioners was derived under a deed of this corporation to James W. Fenno, dated June 17, 1828, containing the following description of the premises : " Also another parcel of land on said Haverhill Street and the canal, bounded northeasterly on Haverhill Street, there measuring four hundred sixty two feet, nine inches; northwesterly on Causeway Street, fifty one feet, ten inches; southwesterly on the canal, four hundred sixty six feet, five inches ; and southeasterly on Traverse Street, fifty two feet, six inches. Said parcel of land is marked Canal Lot number two on said plan, [referred to in a former part of the deed,] and contains twenty four thousand nine hundred and twenty four superficial square feet. An attested copy of said plan is recorded with Suffolk deeds, Liber 329, Folio 1. Together with a privilege in said canal, and all other privileges and appurtenances to the premises belonging ; " " said grantees, their heirs and assigns, must maintain the wall against said canal lots forever, and they will be permitted to drive piles against such parts of the wall as have projected into the canal, from which land ties may be fastened to prevent any further pressure outwards." On the plan, which was produced at the hearing, the lot appeared to be bounded on the side of the canal, in the boundary line of which, at this place, there was a slight curve into the canal.

The petitioners claimed damages for two hundred and ninety one square feet of land taken by the respondents, for the injury to the remainder of the lot, for the filling up of the canal and the destruction of the petitioners' rights and privileges in the same, and for the destruction of a certain platform wharf, extending partially beyond the edge of the canal, and rendered necessary by the bulging of the wall, and which the petitioners claimed the right to build by virtue of their deed of the premises, for the use of the canal. There was no evidence to show any right in the petitioners by disseisin or adverse possession.

Otis Minot was called as a witness by the petitioners, and was permitted to testify, under objection, to the nature, extent

and amount of all the business done by J. H. Bartlett & Co. upon the land in question, for the sole purpose of showing how and to what extent the same might be used by any one, and as one element of market value.

The respondents presented various requests for rulings, one of which was as follows: "3. If the jurors shall find that by reason of the filling up of the canal by the respondents and the location of their road over a part of the petitioners' lot of land, the value of the land was so enhanced that what remained of the same lot after the filling up and location was worth more than the entire lot before the filling up and location, the petitioners have no claim for damages."

The judge instructed the jury that they should take it as settled that the petitioners had a perpetual right to the reasonable use of the canal; to have vessels lie there; to have ingress and egress for vessels; and to use their land and the canal with it for dock purposes, subject to the restrictions of the deed; that the petitioners, in connection with their duty to keep the canal in repair, had also a right to drive piles against the wall, to connect them by land ties with their land, and to cover these and the ends of the piles with a platform, so as to obtain access to the canal, if that was necessary to the reasonable use of the canal, and thus they had an easement in the space necessarily covered by this platform, for which, if valuable, and destroyed by the respondents, they had a right to claim damages; that damages for the destruction of an easement are to be recovered in the same way and under the same rules that fix the measure of damages for land taken; that the petitioners were entitled to recover for the injury to the market value of their estate, and not any peculiar value to the petitioners on account of their business, on the day of the location of their railroad; that this injury was subject to a qualification introduced by Rev. Sts. c. 24, § 31, (providing that the jury shall set-off the benefit, if any, to the property, by reason of such location); and the judge read to the jury and commented upon the opinion of this court in *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291; and, with these explanations and under these rules, directed the jury to find the

damage to the petitioners on the day of filing the location, and to add the interest thereon.

The jury returned a verdict for the petitioners, with $21,493 damages; and the respondents alleged exceptions.

*B. F. Thomas & C. P. Judd,* for the respondents, cited, (1) as to the proper parties to the petition, *Smith* v. *Goulding,* 6 Cush. 154; *Dyer* v. *Clark,* 5 Met. 576; (2) as to whether this was the proper remedy, *Boston & Maine Railroad* v. *Bartlett,* 3 Cush. 224; (3) as to the construction of the deed, and the title of the petitioners, Broom's Max. (2d ed.) 366; *Nichols* v. *Luce,* 24 Pick. 102; *Howell* v. *McCoy,* 3 Rawle, 256, 271; *Clap* v. *M'Neil,* 4 Mass. 590; *Loring* v. *Otis,* 7 Gray, 565; *Prescott* v. *White,* 21 Pick. 342; (4) as to the refusal to give the instruction requested upon the question of damages, *Upton* v. *South Reading Railroad,* 8 Cush. 601; *Dwight* v. *County Commissioners,* 11 Cush. 201; *Dickenson* v. *Fitchburg,* 13 Gray, 546, 558; *Livermore* v. *Jamaica,* 23 Verm. 361; *Watson* v. *Pittsburg & Connellsville Railroad,* 37 Penn. State R. 469; *Troy & Boston Railroad* v. *Lee,* 13 Barb. 169; (5) as to the admission of Minot's evidence, *Boston & Worcester Railroad* v. *Old Colony & Fall River Railroad,* 12 Cush. 605; *Boston & Maine Railroad* v. *Middlesex,* 1 Allen, 324; *Schuylkill Navigation Company* v. *Thoburn,* 7 S. & R. 422.

*J. G. Abbott & H. C. Hutchins,* for the petitioners, cited, on the first point, Colly. Part. §§ 133, 134, 135; *Dyer* v. *Clark,* 5 Met. 562; *Howard* v. *Priest,* Ib. 582; *Burnside* v. *Merrick,* 4 Met. 537; *Moore* v. *Boston,* 8 Cush. 274; *Boynton* v. *Peterborough & Shirley Railroad,* 4 Cush. 467; on the second point, *Hazen* v. *Boston & Maine Railroad,* 2 Gray, 574; on the third point, *Ashby* v. *Eastern Railroad,* 5 Met. 368; *Davidson* v. *Boston & Maine Railroad,* 3 Cush. 91; on the last point, *Dwight* v. *County Commissioners,* 11 Cush. 201; *Boston & Worcester Railroad* v. *Old Colony & Fall River Railroad,* 12 Cush. 605.

BIGELOW, C. J. The objections made to the right of the petitioners to commence and prosecute this proceeding are untenable.

12*

1. The fact that the real estate taken by the defendants was originally purchased with partnership funds, and for the use and occupation of the firm, was wholly immaterial. The legal title was in the members of the firm as tenants in common; *Goodwin* v. *Richardson*, 11 Mass. 469; and the right to recover damages vested in those who were the legal owners of the estate at the time the land was taken. Besides; as there are no joint debts, there is no equitable claim or lien on the damages sought to be recovered in this suit in favor of creditors or the surviving copartner. It is a case, therefore, where the legal and equitable title to the damages is united and vested in the surviving member of the firm and the representative of the deceased copartner. *Moore* v. *Boston*, 8 Cush. 274.

2. The position that the land was entered upon by the defendants under an agreement for its purchase, and not taken in the exercise of the right of eminent domain, is not supported by the facts in proof. The defendants could not have relied on their executory contract for the purchase of the land in entering upon it and locating their road over it. At the time of their entry and location they had no title to the estate, nor any right to take possession of it. The owners having then refused to perform their contract for the conveyance of the estate, the defendants were left to their legal and equitable remedies for its breach. The only right which they had to enter upon and take the property was under the power conferred by their charter; and the location filed by them in pursuance of Rev. Sts. *c.* 39, § 75, is decisive evidence that they acted under the statute and by virtue of their location in taking the land, and not under any supposed or implied assent of the owners.

3. We are then brought to the consideration of the exceptions to the rulings of the court touching the title of the petitioners to the land and easements for the taking of which damages are claimed in this proceeding. The first raises a question as to the permanent nature of the right claimed by the petitioners in the canal which was filled up by the defendants. On this point we can entertain no doubt. The deed under which they claim conveys a privilege in the canal to hold to them and their heirs and

assigns forever. This was sufficient *prima facie* evidence of a title to a perpetual easement. The deed was presumptive proof that the grantor had such right and title as would render the act done by him operative and valid, and, in the absence of any controlling evidence, authorized the petitioners to ask for damages for the destruction of a permanent easement. *Ward* v. *Fuller*, 15 Pick. 185, 189. On this point the rulings of the court were not open to any valid objection.

4. The next question arising on this branch of the case involves an inquiry into the right of the petitioners to an easement in the space immediately adjoining the wall of the canal, over which a platform had been erected resting on piles. As it is admitted that the petitioners have acquired no title by adverse use or occupation, the extent of their right must depend on the construction of the deed from the Boston Mill Corporation under which their title to the premises in controversy was derived. On looking at the terms of this grant, it appears that the land conveyed was described as a lot on the canal, and was bounded southwesterly thereby, " being canal lot number two as laid down on a plan," to which reference is made. Taking this description in connection with the plan, it is clear that the premises conveyed were bounded by the canal, and did not extend beyond it. If there were any doubt of this on the language of the grant, it is manifest from an inspection of the plan, which is to be deemed a part of the description, that the intent was to convey a lot bordering on the line of the canal, and to exclude any land comprehended within the limits of the canal itself. But it is claimed by the petitioners that the right to erect the platform is conveyed by the clause in the deed which gives to the grantees " a privilege in said canal," and a permission to " drive piles against such parts of the wall as have projected into the canal, from which land ties may be fastened to prevent any further pressure outwards." We cannot think that this is a reasonable interpretation of this part of the deed. The grant of a privilege in the canal was intended only to give to the grantees a right to use it for navigation, and as adjacent to the wharf lot for the usual purposes to which a water way might be

properly appropriated. The permission to drive piles and to fasten them by ties to the wharf was designed only to enable the grantees to support the wall against the canal, which by the deed they agreed to maintain, and to prevent it from pressing further into the canal and thus obstructing free passage through it. But beyond this no right or easement was granted; certainly none under which the petitioners could claim to erect and main tain a permanent platform projecting over the surface of the canal. Besides; it seems to have been overlooked at the trial that the permission to drive piles extended only to that part of the wall which had pressed outwards and projected into the canal at the time of the grant, and not to the entire space over which the platform was built when the premises were taken by the defendants; so that if the claim of the petitioners could be supported at all, it could not embrace the area covered by the platform as shown on the plan. We are therefore of opinion that the court erred in instructing the jury that the petitioners, by the terms of the grant under which their title was derived, had any right to damages for the destruction of an easement in the space occupied by the platform wharves.

5. It was contended by the defendants that the original grant from the Boston Mill Corporation did not include the projection in the wall which existed at the date of the deed, but was confined to the line of the wall as originally built, so that the defendants had no title beyond a straight line drawn from one corner of the lot granted upon the canal to the other. But the words of the deed, taken in connection with the plan, do not warrant such an interpretation. The premises granted were bounded by the canal, that is, by the canal as it was then practically used and constructed, and as laid down on the plan. This clearly comprehended all the land lying northerly of the wall. So it must have been understood by the parties, because by reference to the plan it will be seen that the part which projects into the canal by reason of the irregularity in the wall is laid down as part of lot number two.

6. On the question of damages, it seems to us that the instructions of the court were deficient in not being responsive to

the third prayer submitted by the counsel for the defendants, which contained an accurate statement of the rule of law applicable to the claim of the plaintiff for the peculiar damages sustained by him in taking his land, and the deduction to be made for benefits which accrued to him therefrom, as distinct from those received by other owners of land in that neighborhood, whose land was not taken. The instructions given were correct as abstract propositions, but were deficient as stating only general rules and principles, instead of being adapted to the nature of the case, which was developed by the evidence concerning the situation and peculiar character of the property taken by the respondents. It would be very difficult for a jury to make a proper application of a rule of law in a case like the one at bar, if their attention was not called to its practical operation on the claim made by the petitioners for damages. It was especially necessary that, in estimating the damages done to the land of the petitioners, they should have been instructed that they were to deduct from the value of the land taken the amount of the benefit which accrued to the petitioners by the increase of the value of the residue of the lot, although other lots in the immediate vicinity bordering on the canal had received a similar benefit by the location of the railroad over them. Otherwise the jury might be led to think the case fell within the rule laid down in the decision which was read to them by the court in *Meacham* v. *Fitchburg Railroad*, 4 Cush. 291, in which it was decided that no deduction was to be made from damages caused by the location of a railroad by reason of a benefit received by the person whose land was taken, in common with other owners of real estate in the vicinity whose land was not taken for the construction of the road. The omission to state the true distinction on this point, in connection with the refusal to give the third instruction asked for by the defendants, left the case without any adequate directions to guide the jury in a just and correct assessment of damages.

7. The testimony relating to the nature, extent and amount of the business done by the firm of Bartlett & Co. on the

premises in controversy was objectionable, as tending to introduce an element of damage which was not proper for the consideration of the jury. The petitioners could not recover in this proceeding for the damage done to their business, but only for the value of the land. *Boston & Worcester Railroad* v. *Old Colony & Fall River Railroad*, 12 Cush. 605. Nor are we able to see how a particular use of the land by the firm could show its market value. With the qualification with which this evidence was submitted to the jury, we are inclined to the opinion that it was incompetent and ought not to have been considered in forming an estimate of the damages.    *Exceptions sustained.*