# Scholl *v.* Emerich, Appellant.

*Canals — Condemnation of land — Title — Easement — Abandonment —Revision.*

Where a canal. company condemns land under the Act of April 2, 1811, 5 Sm. L. 266, it acquires only an easement in the land for use of a canal, and when the canal is abandoned, the use and occupation of the land reverts to the owner of the fee.

*Deed—Boundary—Call for highway as boundary—Call for canal as boundary—Canal.*

When a deed calls for a highway as a boundary, unless a contrary intention clearly appears, the grantee takes title, as against the grantor, to the middle of the highway, but nothing more; and this is the rule in Pennsylvania, whether the grantor owns the fee in the entire highway, and nothing upon the other side, or whether the grantor owns land extending beyond the other side of the highway; and the same rule applies where the highway called for as a boundary, is a canal.

Argued Nov. 15, 1906. Appeal, No. 157, Oct. T., 1906, by defendants, from decree of C. P. Berks Co., Equity Docket 1901, No. 792, on bill in equity in case of George P. P. Scholl *v.* Levi Emerich et al. Before Rice, P. J.; Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Reversed.

Bill in equity for an injunction and for an account. Before Endlich, J.

The facts appear by the opinion of the Superior Court.

*Error assigned* was the decree of the court, as set forth in the opinion of the Superior Court.

*W. B. Bechtel,* of *Bechtel & Shalters,* for appellants.—It appears from the evidence that George Keiser was the successor in title of Michael Keiser, his father, who derived title from Stephen Kurtz to a larger tract containing about 120 acres, embracing the tract conveyed by Keiser to Ramsey. From the description it will appear that the Union Canal is called for in the deed as part of the northern boundary of the tract

conveyed by Keiser to Ramsey, but nowhere in the deed is any part of the canal bed embraced in the terms of the conveyance. Nor is there anything whatsoever in the deed or in the evidence adduced by the plaintiff to show that it was the intention of Keiser at the time he conveyed to Ramsey to pass title in the canal bed to Ramsey. The plaintiff by mesne conveyances acquired title to the same tract. It is, therefore, clear from an examination of the deeds offered in evidence upon which plaintiff founds his title that, according to the calls for courses and distances, for boundaries, for measurements, for superficial contents and for visible monuments on the ground, the land conveyed was confined by the express terms of the conveyance within the limits fixed by the deeds offered in evidence and excluded anything beyond: Leonard v. White, 7 Mass. 6; Wright v. Chestnut Hill Iron Ore Co., 45 Pa. 475; Blaine v. Chambers, 1 S. & R. 169; Swartz v. Swartz, 4 Pa. 33; Pickering v. Stapler, 5 S. & R. 107.

It is clear that the plaintiff cannot found his right to the canal bed upon any theory that the fee in it passed as appurtenant to the grant of the land south of it, because it was totally disconnected with his land and had no beneficial or necessary relation to it, nor does the rule in relation to easements or servitudes which have been continuous and apparent in land of another apply, which, under a long line of cases in Pennsylvania, are declared to pass as appurtenant to land by deed or devise or other form of conveyance without being mentioned.

If the plaintiff contend that a canal is of the same character in the eyes of the law as a public street or road opened by authority of law or dedicated to public use in a plot or plan, as is frequently done in the case of laying out building lots, which is the equivalent of an opening by authority of law, or as a small natural nonnavigable stream, so as to carry title to the center of it by the mere mention of it as a boundary, the theory contended for that, upon the abandonment of the canal, the whole of the land formerly occupied by it, together with the towpath and works, would revert to the owner of the land bounded by it on one side at the time of the adandonment,

would not be tenable: Canal Trustees v. Haven, 11 Ill. 554; Lotz v. Iron Co., 10 Pa. C. C. Rep. 497; Banks v. Ogden, 69 U. S. 57; Brisbine v. R. R. Co., 23 Minn. 114; Codman v. Winslow, 10 Mass. 146; Lawson v. Mowry, 52 Wis. 219; Agawam Canal Co. v. Edwards, 36 Conn. 476; R. R. & Coal Co. v. Ingham, 36 Pa. 194; Schenley v. Pittsburg, 104 Pa. 472.

But a canal cannot be regarded as analagous in character to a public road or street or a small stream: Jessup v. Loucks, 55 Pa. 350.

In England it has been recently held that the presumption of law that where a piece of land is conveyed which is bounded by a nonnavigable river or a public highway, the conveyance passes the moiety of the soil of the river or highway, does not apply in the case of the canal: The Chamber Colliery Company, Limited, v. The Company of Proprietors of the Rochdale Canal, L. R. (1895) Appeal Cases, 564.

*Geo. W. Wagner*, with him *D. N. Schœffer*, for appellee.— If the road is entirely upon the margin of grantor's land, then in that case we claim that the grantor, by bounding his land by said street, would convey, not merely to the center, but would convey the whole street: Johnson v. Arnold, 18 S. E. Repr. 370; In re Robbins, 24 N. W. Repr. 356; Wait v. May, 51 N. W. Repr. (Minn.) 471; Palmer v. Farrell, 129 Pa. 162; Pursell v. Stover, 110 Pa. 43; Stover v. Jack, 60 Pa. 339; Freeland v. Penna. R. R. Co., 197 Pa. 529; Paul v. Carver, 26 Pa. 223.

OPINION BY PORTER, J., July 15, 1908:

This litigation arises out of a dispute as to the ownership of a strip of land formerly occupied by the abandoned Union Canal Company. The plaintiff filed this bill to restrain the defendants from tearing down and taking away the stone in a canal lock upon the land in dispute, the court below issued a preliminary injunction, whereupon the defendants filed a bond conditioned that they indemnify the plaintiff for all the stone removed, in case upon final decree the title was adjudged to be in the plaintiff, and the injunction was thereupon dissolved. The cause

proceeded to a final hearing and the court adjudged the title to the land to be in the plaintiff, and found as a fact that the defendants had removed stone to the value of $1,360.75, of which $1,313.50 worth was taken from the part of the land north of the center line of the canal, and $47.25 worth from that part south of said center line; and entered a decree restraining the defendants from further removing any stone from the land upon which the Union Canal had been located, and that the defendants pay to the plaintiff the sum of $1,360.75 as compensation for the stone removed by them. The defendants appeal and, among other things, assign for error the finding that the title to the strip of land was in the plaintiff and the entry of the aforesaid decree.

The defendants asserted title to the premises under a deed from Gordon Chambers, successor in title of the Union Canal Company. The canal company had acquired the right of way over this property by condemnation proceedings under sec. 13 of the Act of April 2, 1811, 5 Sm. L. 266. The canal company did not under that proceeding acquire an estate in fee simple, but only an estate determinable upon the abandonment of the land for use as a canal, and the canal having been abandoned the estate of the grantees of that company in this land must fail: Sholl v. Stump, 24 Pa. Superior Ct. 48; Jessup v. Loucks, 55 Pa. 350; Pittsburgh & Lake Erie Railroad Company v. Bruce, 102 Pa. 23. The Union Canal Company had a right of way only, and that for a single purpose, the construction and maintenance of a canal, and when the canal was abandoned the use and occupation of the land reverted to the owner of the fee. The weakness of the primary contention of the defendants, however, is not a sufficient foundation for a decree in favor of the plaintiff, for the burden was upon him to show title in himself.

There is no dispute as to the material facts in this case and they may be thus summarized from the findings by the learned judge of the court below. George Keiser was the owner of a tract containing 120 acres of land bounded on the north by lands of Adam Kurtz. There was prior to 1823 and still continues to be a public road along that part of the

line between the two farms next to the strip of land in contro-
versy. The Union Canal Company, in 1823, condemned a right
of way through the northern part of the land of Keiser, and
constructed thereon a canal, with its berme-bank and the
entire canal immediately south of the public road, which road
was the boundary between the lands of Keiser and the land of
Kurtz to the north. The right of way of the canal was south
of and immediately adjoining the public road. The canal was
operated upon this right of way for many years, but was finally
abandoned, probably about 1885. The damages of Keiser for
the right of way of the canal company were assessed under
a proceeding in the court of quarter sessions of Berks county
in 1827, and the report was finally confirmed in 1835. The
land thus taken by the canal company contained two acres and
102 perches. The work done by the company in constructing
the canal upon this right of way included the building of the
sandstone lock, from which the defendants took the stone in
question.

While the canal was in operation, on April 14, 1838, George
Keiser conveyed to Daniel Ramsey a part of this 120 acre tract
of land, "containing 93 acres and 88 perches of land, strict
measure," describing the same by adjoiners, courses and dis-
tances and giving the "Union Canal" as part of the northern
boundary; that part of the description here material being in
the following words and figures: "150 perches to a stone on
the Union Canal, thence by the said canal north 78° west 24
perches to a stone, thence north 84¾° west 14 perches to a stone,
south 85½° west 25$\frac{6}{10}$ perches to a stone, north 87¼° west 24
perches to a stone, thence by lands of Adam Kurtz south 81°
west 15$\frac{2}{10}$ perches to a stone, corner of lands of Christopher
Reed, thence by said lands," etc. The title which Ramsey
thus acquired has by sundry mesne conveyances become vested
in this plaintiff. The title of the plaintiff to the strip of land in
controversy, being the land upon which the right of way of the
Union Canal Company was located, is entirely dependent
upon the construction and effect of this deed from Keiser to
Ramsey. Did that deed vest in the grantee the fee in the land
covered by the right of way of the canal, or any part thereof?

If the effect of the call for the canal as a boundary was to extend the title of the grantee in the fee in the land covered by any part of the right of way of the canal company, then how far did the grant go? Did the grantee take title to the center of the canal, or clear over to the line of the Kurtz land, including the entire canal and one-half of the public road on the other side?

The learned judge of the court below held that the case was analogous to that of a call for a street or a non-navigable river and must be given the same effect. He recognized the rule established by Paul v. Carver, 26 Pa. 223; Cox v. Freedley, 33 Pa. 124; Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92; Fitzell v. Philadelphia, 211 Pa. 1, and the many other decisions of the courts of this state dealing with kindred questions, that, unless a contrary intent appears by express reservation or necessary implication, a grant of land bounded by a public highway, a non-navigable river, or an artificial ditch ordinarily carries title to the middle of such highway, river or ditch, if the grantor's title extends so far. The learned judge, however, went very far beyond this rule, and held that the deed from Keiser to Ramsey vested in the grantee the title in fee to the entire right of way of the canal, not merely to the center line thereof. He thus states his reasons for the conclusion reached. "These decisions," referring to Paul v. Carver and kindred cases, "deal with cases where either the grantor was the owner of the land on both sides of the highway, or his title did not go beyond the middle of the same." "They do not settle the question arising where the highway made the boundary of the grant is entirely upon the grantor's land, but upon the margin of it, leaving him no land beyond. The decisions, therefore, cannot be understood as conflicting with the rule elsewhere laid down that grants such as last supposed carry title to the grantee not only to the middle, but all the way across to the farther side of the highway: Johnson v. Arnold, 91 Georgia, 659. But an examination of the authorities establishing the rules just stated shows that they are founded in part upon public policy adverse to the retention by grantors of land abutting upon highways, and intended to be occupied thereby,

of the soil underneath them as distinct from the land granted, and partly upon a presumption of intent on the part of the grantor justified by the inherent improbability and actual unusualness of a purpose when parting with property so situated, to retain an interest in a narrow strip of land unavailable while subject to its existing use and inaccessible, except perhaps at its extremities, if that use should cease.' . . . After all, the rule laid down by the decisions—a rule of property as well as of interpretation—is founded quite as much upon public policy as upon supposed intent."

We are unable to assent to the conclusion of the learned judge of the court below for two reasons: (1) The rule as to the effect of a call for a highway as a boundary has never, in Pennsylvania, been so far expanded as to embrace the principle which it was in this case stretched to cover. (2) Even if the rule were as the learned judge held it to be, the conclusion at which he arrived utterly ignored the fact, which he found upon sufficient evidence, that Keiser owned the fee in the land upon both sides of the canal. There is no rule of public policy recognized by any of the Pennsylvania cases which is antagonistic to the right of the owner of real estate to subdivide it in any manner he sees fit, and selling, or retaining such lots and strips of land as his fancy may suggest. All the cases recognize the right of a grantor to retain the fee in the bed of a street or stream, while selling the adjoining land. The rule that a call for a highway as a boundary includes the fee to the middle thereof is based upon the ground that the street or non-navigable stream is to be regarded as a monument and the grant goes to the center of the monument, the middle of the street or stream. Chief Justice LEWIS said, in Paul v. Carver, 26 Pa. 223: "The general rule is well established that where a stream not navigable is called for in a deed as a boundary or monument, it is used as an entirety to the center of it, and to that extent the fee passes. It would require an express exception in the grant, or some clear and unequivocal declaration, or certain and immemorial usage, to limit the title of the grantee, in such cases, to the edge of the river. So land bounded by an artificial ditch extends to the center of the ditch. So, where a street is

called for as a boundary, the title passes to the center of the street. . . . If no other reason could be assigned in support of this rule of construction, the general understanding of the people, and the extensive and immemorial practice of claiming and acquiescing in such rights ought to have great weight." He then referred to the inconvenience which in cities would result from the adoption of any other rule when a street was called for as a boundary, and concludes thus: "Influenced by these considerations the law has carried out the real intention of the parties by holding that the title passed to the center of the street subject to the right of passage. Where a street is called for as a boundary it is regarded as a single line. The thread of the road is the monument or abuttal," and cites Newhall v. Ireson, 62 Mass. 595. In the case thus cited, Chief Justice SHAW said: "The road is a monument, the thread of the road, in legal contemplation, is that monument or abuttal. . . ." Land may no doubt be "bounded by the side of a highway, but it must be done in clear and distinct terms to control the ordinary presumption." The deed construed in Cox v. Freedley, 33 Pa. 124, called for the side of a street as the boundary, and Mr. Justice WOODWARD, who spoke for the court, said: "Deeds may expressly exclude the streets, but unless they do the implication is, from such terms as are found in this deed, that half the street is included. . . . Terms of description such as these, may be regarded, therefore, as having a technical meaning, and as importing a grant to the middle of the street, unless controlled by something else in the deed. There was no ambiguity on the face of the deed. The question raised was, what were the legal import and significance of the words employed by the parties?" It was said in Phinney v. Watts, 75 Mass. 269: "Though we cannot see any reason why the grantor should wish to exclude from his grant the very narrow strip of land between the brook and the edge of the water overflowing its banks—which would be worthless to him, while overflowed—yet this cannot be allowed to influence our judgment. The deed must be construed by the legal rules which are applicable to its terms." In City of Boston v. Richardson, 95 Mass. 146, it was held that a deed bounding land

generally by a highway, with no restricting or controlling words, conveys the grantor's title in the land to the middle of the highway, and we find in the opinion of Judge GRAY in that case this comprehensive statement of the rule: "The general rule of construction may be thus stated; whenever land is described as bounded by other land, or by a building or structure, the name of which, according to its legal and ordinary meaning, includes the title in the land of which it has been made a part, as a house, a mill, a wharf, or the like, the side of the land or structure referred to as a boundary is the limit of the grant; but when the boundary line is simply by an object, whether natural or artificial, the name of which is used in ordinary speech as defining a boundary, and not as describing a title in fee, and which does not in its description or nature include the earth as far down as the grantor owns, and yet which has width, as in the case of a way, a river, a ditch, a wall, a fence, a tree or a stake and stones, then the center of the thing so running over or standing on the land is the boundary of the lot granted." In Warner v. Southworth, 6 Conn. 471, the deed called for a ditch as the boundary and it was held that the grant extended to the center of the ditch. The court said in that case, "In such a case the ditch is to be treated as a common fence or a stone wall." In Champlin v. Pendleton, 13 Conn. 23, the court said, "Land adjoining a highway may be so conveyed as to exclude the highway, yet to produce this effect it must appear in clear and express terms that such was the intention of the parties, otherwise the inference of law is that the conveyance carries, as parcel of the grant, the fee to the center of the highway, if the grantor at that time owned to the center."

The Pennsylvania decisions and the weight of authority elsewhere clearly hold the question to be one of construction in each particular case, upon the intent of the parties, as expressed in the descriptive parts of the deed, explained and illustrated by all the other parts of the conveyance, and by the localities and subject-matter to which it applies. If a deed calls for a highway as a boundary and by express terms, or clear implication reserves to the grantor the fee in the land covered by the highway, the grantee takes only to the side

thereof. When the deed calls for the highway as a boundary, without more, a legal presumption arises that the intention of the parties is that the grant shall go to the middle of the highway. The effect of the rule is, as stated by Mr. Justice WOOD-WARD, in Cox v. Freedley, to give a technical meaning to terms of description, calling for a highway as a boundary, as importing a grant to the middle of the street, unless controlled by something else in the deed. The intention of the parties is clearly recognized as the controlling element. When the call is for a highway as a boundary, unless a contrary intention clearly appears, the grantee takes title, as against the grantor, to the middle of the highway, but nothing more. The case of Johnson v. Arnold, 91 Georgia, 659, relied upon by the learned judge of the court below, is in conflict with the Pennsylvania decisions. The deed in that case called for a road as its western boundary. There was not and never had been a road upon the location, nor had the owner dedicated the land as a public highway. The road contemplated, a mere paper road, was along the extreme western margin of the grantor's land, he owning nothing on the other side. It was there held that the grantee took the fee in the entire road, and that the utmost that the grantor could claim was the right to construct a road over the location. The exact reverse of this is the law of Pennsylvania; with us, where a street called for as a boundary in a deed is not a highway nor dedicated to public use, the grantee does not take title in fee to the center of it, but by implied covenant, acquires an easement, or right of way over the lands: Spackman v. Steidel, 88 Pa. 453; Whitaker v. Phœnixville Borough, 141 Pa. 327; Gamble v. Philadelphia, 162 Pa. 413; Cole v. Philadelphia, 199 Pa. 464; Clymer v. Roberts, 220 Pa. 162; Andreas v. Steigerwalt, 29 Pa. Superior Ct. 1. The question of the effect of a deed calling for a public highway as a boundary, when the grantor owns the fee in the entire highway and nothing upon the other side, was considered by the Supreme Court of the United States in Banks v. Ogden, 69 U. S. 57. Kinzie had laid out a plan of lots near the city of Chicago, one of the streets ran along the shore of Lake Michigan and Kinzie conveyed one of the lots to Ogden, the deed calling for this

street as a boundary; there was not in front of the lot sufficient land to give the street its full width, and beyond the street as thus narrowed was Lake Michigan, to which no one had or could acquire title. There were subsequent accretions by alluvion upon the street as thus bounded and the land was extended out considerably more than sufficient to give the street its full width. Banks acquired the title of Kinsey in the accretion and Ogden contended that under his grant, calling for the street as a boundary, he took to the lake and was entitled to the accretion. The supreme court of the United States held that Ogden took under his grant the fee in one-half of the street as it existed at the time of the grant and that the fee in the other half, next the lake, remained in the grantor. This decision is in direct conflict with the conclusion reached by the court below. In the case of Canal Trustees v. Havens, 11 Ill. 554, the call in the deed was for a street which alone separated the land granted from the river—there was no land upon the other side. The grantee claimed the fee in the entire street, thus carrying his title to the river and making him a riparian owner. The supreme court of Illinois held that the grantee took title to the middle of the street, "which is regarded as the boundary or monument, and the purchaser takes to the middle of the monument, as part of the grant." It may here be observed that the deed from Keiser to Ramsey was made long prior to the Act of February 27, 1849, P. L. 90, and that statute could have no effect upon what passed under the grant. Even if Keiser had not been the owner of the fee in the land north of the canal, his deed to Ramsey did not vest in the latter the fee in the land north of the middle line of the canal.

Even if the rule were, as stated by the court below, that a conveyance of land calling for a public highway as a boundary, when the grantor owns the fee in the land covered by the entire highway and nothing upon the other side, passes to the grantee the fee in the entire width of the highway that rule could have no application in the present case. The learned judge found as a fact, upon sufficient and uncontradicted evidence, that the public road north of the canal was the line between the lands of George Keiser and Adam Kurtz, at the

time the former conveyed a part of his lands to Daniel Ramsey. The evidence would have sustained a finding that the lands of Keiser actually extended north of the middle of that road, but leaving that evidence out of consideration, the road being found to be the line between the two tracts, the presumption of law arises, even in the absence of the title papers, that the land of Keiser extended to the middle of the road: Grier v. Sampson, 27 Pa. 183. Keiser therefore owned the land on both sides of the canal; his land north of the canal was, it is true, subject to the easement of the public road, but still the fee was in him. The deed did not call for the road as the northern boundary of the grant to Ramsey, but did call for a physical barrier to the southward, the canal which was then in full operation, as the boundary upon that side. There is no ground whatever for presuming that it was the intention of the parties that Ramsey should take the fee in the land covered by the southern half of the public road. The case was simply this, Keiser owned the land on both sides of the right of way of the canal company and he owned the fee in the land covered by that right of way, and he conveyed to Ramsey the land upon one side of the right of way calling for the canal as a boundary. The utmost that Ramsey could take under this deed would be the fee in the southern half of the land covered by the right of way of the canal company.

The learned counsel for the appellant contends that the reasons for this rule, that a grant which calls for a public road, street, or small stream as a boundary passes to the grantee the fee in the land to the middle of the road or stream, are entirely absent when the call is for a canal as a boundary, and that the rule has no application in this case. It is true that the owner of land abutting on the right of way of a canal or railroad cannot devote the land covered by the right of way to such uses as the owner of abutting property may make of land covered by a road or street, which were suggested in the opinion of Chief Justice Lewis, in Paul v. Carver, 26 Pa. 223, as among the probable reasons for the origin of the rule. The canal company has the right to the exclusive use and possession of its right of way. The owner of abutting property has no

right, as such owner, to use the surface of the land covered by the right of way in any manner that any other citizen has not an equal right to so use it. His right in the canal is precisely the same as that of any other person, he may use it for the purposes of navigation, subject to the regulations of the canal company, authorized by law. This difference between the rights of an owner in a street or stream upon which the property abuts and those of an owner of land in the right of way of a canal company which forms the boundary of his property has led to a conflict in the decisions of the courts which have been called upon to consider the question with which we are now dealing. In England the question arose in Chambers Colliery Company v. Company of Proprietors of Rockdale Canal, Law Reports (1895), Appeal Cases, 564, and it was there held that the rule that a call for a highway as a boundary carried the title of the grantee to the center of the highway was not applicable when the call was for a canal as a boundary, and that the grantee took title only to the side of the canal. It was held by the supreme court of Massachusetts, in Whitman v. Boston & Maine Railroad, 85 Mass. 133, that a deed which called for a canal as a boundary, "together with a privilege in said canal," vested in the grantee the fee in the land to the side of the canal only, with the privilege to use the canal for the purpose of navigation. In that case, however, the canal company was the grantor and it owned both the lot and the land covered by the canal in fee. On the other hand, it has been held in Connecticut and Wisconsin that a deed calling for a canal which is a public highway as a boundary passes to the grantee the fee in the land to the center of the canal: Goodyear v. Shanahan, 43 Conn. 204; Lawson v. Mowry, 52 Wis. 219. While the question as to the effect of a call in a deed for a canal as a boundary has never in precise terms been passed upon by the Supreme Court of Pennsylvania, the principles involved have been considered and the question does not seem to be an open one. The estate acquired by this canal company when it condemned a right of way through the property of George Keiser was the same in its nature and incidents as that which is acquired by a railroad company when it condemns a right of way, or acquires

by agreement with the owner of land a mere right of way, and not an estate in fee. The railroad company, like a canal company, has the right to exclusive possession of the surface of the land covered by its right of way, and the owner of abutting property has no right to trespass upon it or interfere with that possession, no matter whether he is the owner of the fee subject to the right of way or not. The Supreme Court of Pennsylvania, in Rice v. The Clear Spring Coal Company, 186 Pa. 49, held that when a railroad company acquired a right of way merely for the purposes of a railroad through a tract of land, the ownership in fee of the soil remaining in the grantor, and the land on each side of the right of way was subsequently sold in two separate tracts, the deed in the description of each tract calling for the railroad as a boundary, the grantee upon each side of the right of way took the fee in the land to the center of the right of way, subject to the easement, as part of the land granted, under the general rule of construction applied to such grants, that a conveyance of land bounded on a public highway carries with it a fee to the center of the highway as part and parcel of the grant. The cases are so precisely analogous that this decision must be accepted as determining the question now presented. The same conclusion was reached in Maynard v. Weeks, 41 Vermont, 617.

Daniel Ramsey, it is true, got the "93 acres 88 perches strict measure" which his deed called for, south of and exclusive of the right of way of the canal company. The call in his deed was for the canal as a boundary, a survey according to the courses and distances given in the description carried to the south side of the towpath of the canal. The call was not for the bank of the canal, nor for the water in the ditch, but for the canal generally. The canal was then in operation, and the call for the canal is to be construed as a call for the right of way upon which it operated. The effect of this call was to vest in Daniel Ramsey the fee in the southern half of the right of way, and the line to which the plaintiff's title carries is the middle of the right of way.

The decree is reversed and the record is remitted to the court below with direction to enter a decree permanently restraining

the defendants, and each of them, from further removing any stone from that part of the right of way of the Union Canal Company south of the middle line of said right of way, and that the defendants pay to the plaintiff the sum of $47.25, as compensation for the stone removed by them from that part of the right of way of said canal company south of the middle line thereof, and that the defendants pay the costs in the court below. And it is further ordered that the costs of this appeal be paid by the plaintiff, the appellee.