## Rialto Building & Loan Assn. v. Commonwealth Title Company of Philadelphia

*L. Arthur Greenstein,* for plaintiff.
*Philip W. Amram,* for defendant.

HEILIGMAN, J., April 14, 1936.—Plaintiff instituted suit upon a policy of title insurance issued by defendant to plaintiff as mortgagee and later transferred to plaintiff as owner after a foreclosure of the mortgage insured. Plaintiff claimed that the policy insured as a public street a street laid out on a private plan but unopened and unplotted on the city plan, and averred that said street was not a public street. At trial, after the presentation of plaintiff's evidence, a nonsuit was granted, and the case is now before the court on a motion to take off the nonsuit.

A summary of the events in chronological order leading up to this case is as follows:

By deed dated January 6, 1926, Lena Perlman acquired title to a single tract of land located on the north side of Louden Street in Philadelphia. On January 20, 1926, a bond and mortgage were given by Lena Perlman to Frank H. Moss in the amount of $25,000 secured upon two parcels of this tract, the remainder of the tract not included in the description in the mortgage being a 40-feet wide strip intended as the bed of a proposed street referred to as Garden Terrace, which subsequently became known as Wakefield Street, and a three-feet wide alley along the west and northwest sides of the westerly parcel, hereinafter referred to merely as "the alley". The two parcels securing the mortgage were on the east and west sides of the proposed street and are hereinafter referred to as A and B, respectively. On May 19, 1926, the Home Protection Building & Loan Association entered a judgment against Lena Perlman on a bond accompanying a mortgage, which became a first lien on the land not described in the mortgage, namely, the bed of the proposed street and the alley. By deed dated August 4, 1926, Lena Perlman conveyed the strip of land which is the bed of Wakefield Street, the same as the bed of Garden Terrace except for a slight change hereinafter explained. Due to this change the description of the street does not follow the description in the Moss mortgage exactly. This deed was to the City of Philadelphia, and the

lien of the judgment was not mentioned therein. By deed dated August 17, 1926, Lena Perlman conveyed to David Jenner 37 lots, which composed all of parcels A and B except six lots fronting on Louden Street and four lots fronting on Stenton Avenue. The description of these lots followed the old description of Garden Terrace. By deed dated November 26, 1926, Jenner conveyed to the city a small strip of ground on the northwest side of Wakefield Street, previously included in the Perlman deed to the city. This small strip was subject to the Moss mortgage followed by the lien of the judgment.

Suit was entered upon the Moss mortgage, and a deed poll dated December 31, 1927, was given by the sheriff to one Harry H. Jones for the two parcels A and B. By deed dated December 31, 1927, Jones conveyed the same parcels to one Sydney Adelman, who on the same date obtained a quitclaim deed from Lena Perlman for the same parcels, but described according to the change in Wakefield Street hereinafter mentioned, and including the alley. On the same date, namely, December 31, 1927, a bond and mortgage were given by Adelman to plaintiff in the amount of $11,000, secured upon the same two parcels described according to the change in Wakefield Street, and including the alley. This mortgage was foreclosed and plaintiff received a sheriff's deed poll dated November 12, 1929. By deed dated March 24, 1930, plaintiff conveyed the two parcels described in the Adelman mortgage to Leon C. Friedman, and on the same date took back a purchase-money mortgage in the amount of $14,000. The mortgage was foreclosed and the two parcels A and B, as described in the Adelman mortgage, including the alley, were purchased by plaintiff on January 4, 1932, at the sheriff's sale.

On the judgment against Lena Perlman an execution was held resulting in a sheriff's sale, and one Berman, to whose use the judgment had been marked on August 25, 1932, purchased the 40-foot strip of ground which was the bed of Garden Terrace before its change to Wakefield

Street and before the change in the location of the bed of the street.

The original plan of lots was changed and superseded by a plan dated June 30, 1927. The change consisted of moving a portion of Wakefield Street about two feet three inches. The original Garden Terrace was roughly L-shaped and extended almost due north from Louden Street about 333 feet on the west and 319 feet on the east to an angle. At those points it changed to a northeasterly course, 151½ feet on the northwest and 118 1/3 feet on the southeast side, at which points were other angles, and then proceeded almost due east to Stenton Avenue. The portion of the street running northeast and southwest was moved two feet three inches northwest, increasing the distances from Louden Street to the first angles to about 336 feet and 322 feet respectively.

The description in the Moss mortgage being in accordance with the original plan of March 3, 1925, and not including the street as first plotted, or the alley, the effect of the change in the bed of the street was to take away from the lots on the northwest side of Wakefield Street a strip two feet three inches wide covered by said mortgage, and add to the lots on the southeast side a strip of equal width not covered by the mortgage, the same having been part of the street on the original plan. As to the strip on the northwest side of Wakefield Street, the foreclosure of the Moss mortgage discharged the lien of the judgment of the Home Protection Building & Loan Association, and title to it is presently vested in Adelman, because the mortgage given by Adelman to plaintiff does not include this strip in its description, said strip having become a part of the bed of Wakefield Street as a result of the change above mentioned. The strip on the southeast side of Wakefield Street was not covered by the Moss mortgage, nor was the alley. The lien of the judgment of the Home Protection Building & Loan Association was therefore prior to any incumbrance on said strip and the alley.

Both said strip and the alley, however, were included in the mortgage of Adelman to plaintiff, and the foreclosure of the mortgage, although second in lien in repect to the said strip and the alley, discharged the lien of the judgment on both: Warren Pearl Works v. Rappaport et ux., 303 Pa. 235. Title to the alley and to the said strip on the southeast side of Wakefield Street was therefore in plaintiff in the same manner as the two main parcels, A and B, clear of the lien of that judgment, at the time execution was issued on said judgment.

The first question involved is whether or not Wakefield Street was dedicated to the public use by Perlman, either by actual dedication or by a covenant on her part before the lien of the judgment of the Home Protection Building & Loan Association attached, for, if such is the case, Berman, standing in Perlman's shoes, can never prevent the opening of said street or obstruct the use of it when opened by plaintiff or its successors in title: Tide Water Pipe Co. v. Bell, 280 Pa. 104. The evidence in plaintiff's case shows that the surveyor and regulator of the district prepared for Perlman a plan of lots on the original tract in which Garden Terrace is shown as a proposed street. This plan is dated March 3, 1925, some nine or ten months before title to the original tract was taken in the name of Perlman's wife. The mortgage to Moss was made a few days after title had been transferred to Lena Perlman and recites that the description of the mortgaged premises is in accordance with said survey and plan. Tracts A and B, the premises thus mortgaged, are described according to the plan. Since Garden Terrace was not then opened or even upon the city plan, it is manifest that the reference in the mortgage description to Garden Terrace was not merely an aid to description, but was a mortgage of the property according to the plan.

"These cases hold that a sale of lots by a private owner according to a plan which shows them to be on a street implies a grant or covenant to the purchasers that the

street designated on the plan shall remain open for the use of the lot owners, and operates as a dedication of the street to public use. The rights of lot owners in such a case are founded in the contract of the parties and do not depend upon the acts of municipal authorities. This must be considered as settled law under our decisions, and there is no disposition to disturb this established rule when the facts warrant its application": Bell v. The Pittsburgh Steel Co., 243 Pa. 83, 86.

The mere making of the plan does not constitute a complete dedication, and the plan may be changed or abandoned, provided the rights of the public or of third parties have not in the meantime intervened: Bell v. The Pittsburgh Steel Co., supra. In the present case the description in the mortgage covered two lots or parcels of ground, A and B, separated by a street referred to as Garden Terrace. Garden Terrace was clearly intended to be a street, for otherwise there would have been no outlets to A and B except the narrow frontages on Louden Street and Stenton Avenue. A and B are not wide enough to accommodate 40-foot streets within their boundaries. Moreover, the mortgage includes all "Streets, Alleys, Passages, Ways—and Appurtenances, thereunto belonging or in anywise appertaining". By the execution of the mortgage, rights of third parties accrued in Garden Terrace as a street, and under the case above cited the Perlmans, impliedly at least, covenanted that that·street should be opened and remain open forever for the use and convenience of the lot owners and of the public as a necessary incident to the use by the lot owners.

While a mortgage is not a deed of conveyance, it is nevertheless in form a conveyance with a defeasance clause, and as between the mortgagor and mortgagee it has been well said that the title in fact passes to the mortgagee insofar as it may be necessary to render the instrument effective as a security: Lloyd on Mortgage Theory of Pennsylvania, 73 University of Pa. L. Rev. 43.

We therefore have no difficulty in holding that a mortgagee qualifies as a purchaser in respect to rights in the use of Garden Terrace as a street. The security of the mortgage would be materially diminished without a street between the two parcels.

Plaintiff argues that the reference to the survey of March 3, 1925, in the Moss mortgage was merely for the purpose of describing the property, citing Stoever et al. v. Gowen et al., 280 Pa. 424, 431. In that case the deed conveyed premises described "according to a survey made thereof by John H. Dye, surveyor, in December, 1885". The court said:

". . . the words in the deed cannot be given the sweeping effect which would be given was the plan actually referred to and cannot be made to import more than they say, that Dye surveyed the lots. In all cases where covenants implied from the recital of a plan in a deed have been upheld by us there has been a direct and categorical reference to the plan; they all say actually that the lots 'were sold and conveyed according to the plan' (Quicksall v. Phila., 177 Pa. 301), or use some like expression: Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318; Garvey v. Harbison-Walker Refractories Co., 213 Pa. 177; O'Donnell v. Pittsburgh, 234 Pa. 401; Tesson v. Porter Co., 238 Pa. 504; Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519; but in the deeds we are considering, there is no reference to the plan whatever, and it cannot be imported into the deeds because of the principle heretofore quoted."

The words in the Moss mortgage are as follows: "All those two certain lots or pieces of ground, described according to a Survey and Plan thereof made March 3rd, 1925, by John T. Campbell, Esq." That is a "direct and categorical reference to the plan". Only a survey, not a plan, was mentioned in the Stoever case. In the present case the reference was as direct as in some of the cases cited in the Stoever case, as an examination of the paper

books in those cases shows. In The City of Pittsburgh v. The Epping-Carpenter Co., 194 Pa. 318, the plan of lots was made up and recorded, after which the land was sold by the sheriff to a creditor. The creditor then sold the lots, describing them by number "in plan of village of Lawrenceville, now in possession of party of the first part". In Garvey v. Harbison-Walker Refractories Co., 213 Pa. 177, the lots sold were described by number on a plan of lots and called for certain streets and alleys. In Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519, the lots were sold by description by metes and bounds, being no. 2 in a plan of building lots. In Tesson v. Porter Co., 238 Pa. 504, the lots were sold by number on a plan of lots laid out by P. H. Miller, and finally in O'Donnell v. Pittsburgh, 234 Pa. 401, the conveyance was by deed for "all that certain lot situate in the town of Hatfield, Peebles township, being the same lot marked in the plan of lots laid out by George A. Bayard, No. 32, bounded by Harrison Street, Allegheny Street, and Cherry Alley, containing in front on Harrison Street fifty feet, and running back one hundred feet." This last case, it seems to us, answers plaintiff's argument completely.

Plaintiff also argues that the mortgage could not create an easement which presently exists because of the outstanding interest of a third party, Berman, in the bed of the street. O'Donnell v. Pittsburgh, supra, answers this at page 41:

"As between parties claiming under Bayard [the original grantor] and having notice of the plan of lots, it is immaterial whether the plan was signed, acknowledged, or recorded: Transue v. Sell, 105 Pa. 604. Such parties are charged with notice of all the plan contains, including the streets and alleys, their location and width. The sale of a lot by Bayard to Lee in 1839 according to the plan, in the absence of anything disclosing a different intention, was an irrevocable dedication of all the streets

and alleys in the plan to public use: 13 Cyclopedia of Law & Procedure 455, Pittsburgh v. Epping-Carpenter Company, 194 Pa. 318, 328, and any subsequent purchaser of a lot in the plan can assert the public character of the streets. The plaintiff's predecessor in title pur-. chased from Bayard in 1840 and hence became the owner of an easement over the streets which was appurtenant to her lot of which she could not be deprived by a subsequent purchaser affected with knowledge of the plan. . . . The defendant company is therefore estopped from denying to the plaintiff any rights which she acquired through her predecessor in title who purchased one of the lots in this plan." See also Henderson et al. v. Young et al., 260 Pa. 334, 337.

Plaintiff's argument in regard to the word "proposed" on the plan of lots is not borne out by the cases. In The City of Pittsburgh v. The Epping-Carpenter Co., supra, according to the paper books, one of the deeds in question described a property as running along a street which the grantor proposed to lay out north 27 degrees, 41 seconds, east 172 perches.

Plaintiff, in citing cases, has failed to bear in mind the distinction between reference in a deed to streets mentioned in a private plan and to streets which are on the city plan or which are actually public streets. The former is the case here. As pointed out in Stoever v. Gowen, supra, reference to private streets appearing on an owner's plan is a covenant that such streets are to remain open and a dedication of them to the public use forever, irrespective of what action the municipality takes, but where an owner lays out his land to conform with a street already public there is no covenant by the owner when he sells the lots from the plan that the street shall remain open, the reason being that the control of the public street is in the municipality and not the owner of the lots. The same rule applies to streets plotted but not opened by the municipality, but the grantor, how-

ever, would be estopped from interfering with the use of the street after vacation by the municipality: Shetter v. Welzel, 242 Pa. 355.

In Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., supra, where it was held that, where the public authorities subsequently adopt the private plan of streets, the rights of lot owners to an easement continue after the street is vacated by the public authorities, it was pointed out that the public authorities may accept or reject the easement thus tendered by the owner of the plan of lots, but no act of such authorities can divest the lot owners of their contractual right to use the easement as a street, and, conversely, no act of the owner of lots can impose a public street upon the municipality if it chooses to reject it. The court then went on to say, at page 523:

"By such dedication the grantor covenants with his grantees that the dedicated streets shall remain open forever not only for the use of all lot owners as a means of ingress and egress to their properties, but for the use of the public desiring access thereto. The public use adds value to the private right and this may be fairly said to have been in contemplation of the parties to the covenant. The lot owners have the right to insist not only on the use of the street for their own purposes, but that the public shall have the same right to make use of it. All of which is intended as a benefit to the lot owners and not as an independent right in the public."

Plaintiff also argues that since the Moss mortgage conveyed the tract as two large pieces of land, and not lot by lot, the plan of lots might be changed by the owner. We disagree with this contention, because, as already pointed out, the Moss mortgage created rights in the mortgagee which prevented a change in the plan so far as the street is concerned: Bell v. Pittsburgh Steel Co., supra. The plaintiff here is the owner of the same two pieces of land as described in the mortgage and is claim-

ing substantial damages because it believes there is no street between them. If the absence or presence of a street is now important to plaintiff, it was very likely as important to the mortgagee in the Moss mortgage. As plaintiff contends, without Wakefield Street its property is damaged, and there is no reason why the mortgagee in the Moss mortgage was not equally aware of the necessity for having a street there, whether the land securing his investment was in two parcels or a number of building lots. Without the street, his security was definitely weakened.

Plaintiff has also cited cases in which the question was not whether an easement existed but whether title to the bed of a street had passed. As it is conceded here that Wakefield Street or Garden Terrace were not public streets, those cases are not in point. It is well settled that where a street called for as a boundary in a deed is not a highway, nor dedicated to public use, the grantee does not take title in fee to the center of it, but by implied covenant acquires an easement or right of way over the lands: Scholl v. Emerich, 36 Pa. Superior Ct. 404, 410, 413; and where the boundary is a projected or plotted street of the municipality but unopened the rule is the same: Neely v. Philadelphia, 212 Pa. 551, 557; Hawkes v. Philadelphia, 264 Pa. 346. Unquestionably the Moss mortgage did not include the bed of Wakefield Street or Garden Terrace. But for this fact the case would be squarely within Baker v. The Chester Gas Co., 73 Pa. 116, 121.

What has been said thus far establishes the fact that plaintiff now has an easement over the bed of Wakefield Street, so far as it coincides with the original Garden Terrace, which easement will endure so long as plaintiff and its successors in title may choose to continue it. If the street is opened and taken over by the city and then eventually vacated, the easement of public use for the benefit of the lot owners will nevertheless continue after

such vacation. By the same theory, the mortgage of Adelman to the plaintiff created a like easement ·in the strip on the northwest side of Wakefield Street. The strip on the southeast side of Wakefield Street, as already stated, has been withdrawn from use as a street by persons claiming through the Moss mortgage, whose right to do so is superior to any right Berman may have.

It seems to us that, so far as Wakefield Street as a street is concerned, plaintiff has all that it would have if Wakefield Street were actually a public street on the city plan or if plaintiff owned the bed of the street. We realize, of course, that if it owned the bed of the street the two parcels could be reunited into one single tract as originally acquired by Perlman. However, if the Moss and plaintiff's mortgages do not include the fee to the bed of the street: Scholl v. Emerich, supra; plaintiff's title policy would not insure the title to the bed of the street, as the premises in the title policy are described "as in the mortgage insured". If this opinion is correct, plaintiff's title to the two parcels has been determined as being marketable insofar as the use of the street affects marketability, and that is all the policy insured.

The evidence which plaintiff offered, but which was excluded, related to matters leading up to the issuing of the title policy and merged therein. Furthermore, all that that evidence tended to prove was that Colonial Title Company, the company through which plaintiff's policy was issued by defendant, held at one time the opinion that Wakefield Street had been formally dedicated and accepted by the city. Conceding that defendant saw these earlier records, there is nothing to show that defendant held the same opinion, and even if defendant held that same opinion the inference that the title policy was therefore intended to insure Wakefield Street as a formally dedicated and accepted street is too weak to sustain recovery.

For these reasons, the motion to take off the nonsuit is overruled.